NUTRITIONAL HEALTH ALLIANCE
and Soo Man Shim d/b/a New
Nutrisserie, Plaintiffs,.

v.

Donna SHALALA, in her official capacity
as Secretary, U.S. Dept. of Health and
Human Services, and David A. Kessler,
Commissioner, Food and Drug Administration, Defendants.

No. 95 Civ. 4950 (RO).

United States District Court,
S.D. New York.

Jan. 31, 1997.

Bass & Ullman (Milton A. Bass, Steven Shapiro, of counsel), New York City, for Plaintiffs.

Mary Jo White, United States Attorney for the Southern District of New York (Kay K. Gardiner, of counsel), New York City, for Defendants.

## OPINION AND ORDER

OWEN, District Judge.

Americans spend approximately $3.5 billion a year on vitamins and other dietary supplements, with more than 120 million people taking them regularly. Under the current federal regulatory scheme, retailers and manufacturers are prohibited from making any "health claim" [1] or "disease claim" on the labels of these vitamins unless there is a Food and Drug Administration ("FDA") determination that there is "significant scientific agreement" that the claim is valid. Until the mid–1980's there were virtually no health claims on labels because an even stricter standard was in place. In the mid–1980's, however, disease claims, many of them asserted to be unfounded, confusing, and misleading, began appearing on vitamin labels.

---

1. A "health claim" is "any claim made on the label or in labeling of a food, including a dietary supplement, that expressly or by implication ... characterizes the relationship of any substance to a disease or health-related condition." 21 C.F.R. § 101.14(a)(1) (1995). An example of such claim is "fiber cures cancer." In this opinion the terms "health claim" and "disease claim" are used interchangeably.

During the last ten years, Congress, the FDA, the dietary supplement industry, and consumer groups, in an attempt to balance the interests of protecting the public from unsubstantiated health claims on the one hand and maximizing the information available to consumers on the other, have debated whether and under what circumstances to permit these health claims on the labels of vitamins.[2] In 1990, Congress reached a compromise and passed the Nutritional Labeling and Education Act of 1990 ("NLEA"),[3] which in part created the current framework for permitting health claims on dietary supplement labels. Plaintiffs here challenge, on First Amendment grounds, this NLEA framework requiring advanced FDA authorization for health claims made on vitamin labels.

Plaintiff Nutritional Health Alliance is a non-profit association of manufacturers, distributors, and consumers of dietary supplements, and plaintiff Soo Man Shim d/b/a New Nutrisserie is a natural product retailer that also markets a line of dietary supplements. Plaintiffs (collectively "NHA") seek declaratory and injunctive relief, contending that the NLEA and FDA implementing regulations unconstitutionally infringe protected speech. Defendants Donna Shalala, Secretary of the United States Department of Health and Human Services, David Kessler, Commissioner of the FDA, and the United States (collectively "the Government") move to dismiss NHA's complaint under Fed.R.Civ.P. 12(b)(1) and (6) for lack of standing and failure to state a claim for which relief can be granted, respectively. Plaintiffs cross-move for summary judgment.[4]

Recently, the District Court for the District of Utah addressed the central issues here in *National Council for Improved Health v. Shalala*, 893 F.Supp. 1512 (D.Utah 1995) (hereafter "*NCIH*"),[5] and granted the Government's motion to dismiss, finding the framework constitutional. On one issue alone do I disagree.

Under the regulatory scheme now in place, manufacturers submit proposed claims to the FDA for analysis, within the agency's deadlines under 21 C.F.R. § 101.70 (1994) as follows: within 100 days of receiving a petition for a health claim, the FDA must notify the petitioner that the claim is denied or being filed for extensive review; if a claim is filed for such review, within the next 90 days the FDA must either 1) deny the use of the claim, or 2) if it does not deny the claim, publish proposed regulations regarding the claim.[6] There is, however, thereafter, no

---

**2.** At issue here are only the labels and labeling of dietary supplements. A "label" is "a display of written, printed or graphic matter upon the immediate container," while "labeling" means "all labels and other written, printed or graphic matter (1) upon any article or any of its containers or wrappers, or (2) accompanying such article." 21 U.S.C. §§ 321(k), (m) (1994). In this opinion, the terms "label" and "labeling" refer to both the labels and labeling of dietary supplements.

These regulations do not restrict the content of books, magazines or advertising. 59 Fed.Reg. 395, 409 (1994). General advertising of dietary supplements is not under the purview of the FDA, but within the jurisdiction of the Federal Trade Commission. Federal Trade Commission Act, 15 U.S.C.A. § 55 (1972 & West Supp.1995).

**3.** Pub.L. No. 101–535, 104 Stat. 2353 (1990); *see also* H.R.Rep. No. 538, 101st Cong.2d Sess. 7 (1990), *reprinted in* 1990 U.S.C.C.A.N. 3336, 3337 (hereinafter "House Report").

**4.** An *amici curiae* memorandum supporting the Government's position was submitted by the American Cancer Society, American Heart Association, Center for Science in the Public Interest, Public Citizen, and the Consumer Federation of America. Amici assert that if plaintiffs prevail, amici's members would be deprived of "the assurance that only truthful and scientifically valid health claims are made for the foods and dietary supplements they purchase and consume." Amici Mem. at 1.

**5.** Similar actions have also been brought directly to several appellate courts, but those courts have found that they lack original jurisdiction for the cases. *Wellife Products v. Shalala*, 52 F.3d 357 (D.C.Cir.1995); *Mineral Resources Int'l v. Shalala*, 53 F.3d 305 (10th Cir.1995).

**6.** Subsection (j) of the regulation establishes the framework:

(j) Agency action on the petition.
(2) Within 100 days of the date of receipt of the petition, FDA will notify the petitioner by letter that the petition has either been filed for comprehensive review or denied. . . .
(3) Within 90 days of the filing, FDA will by letter of notification to the petitioner:
(i) Deny the petition, or
(ii) Inform the petitioner that a proposed regulation to provide for the requested use of the health claim will be published in the Federal

deadline whatsoever imposed on the FDA to promulgate *final* regulations for proposed health claims.[7] The absence of such a deadline here, I conclude, is in conflict with the First Amendment.

After the promulgation of the dietary supplement final rules in January 1994—which are at issue in this case—the landscape of dietary supplement regulation changed yet again with the enactment of Dietary Supplement Health and Education Act of 1994 ("DSHEA").[8] Concern over excessive regulation of dietary supplements and the suppression of truthful information drove the passage of the DSHEA, and the mandates and tone of the DSHEA signal a shift toward a more permissive approach to health claims on labels. For example, the DSHEA announces Congressional findings of fact highlighting the importance of dietary supplements: "[A]lthough the Federal Government should take swift action against products that are unsafe or adulterated, the Federal Government should not take any actions to impose unreasonable regulatory barriers limiting or slowing the flow of safe products and accurate information to consumers;" a new "rational Federal framework must be established to supersede the current ad hoc, patchwork regulatory policy on dietary supplements...."[9] Moreover, upon signing the DSHEA, President Clinton noted that

... manufacturers, experts. in nutrition, and legislators, acting in a conscientious alliance with consumers at the grassroots level, have moved successfully to bring common sense to the treatment of dietary supplements under regulation and law....

[I]n recent years, the regulatory scheme designed to promote the interests of consumers and a healthful supply of good food has been used instead to complicate choices consumers have made to advance their nutritional and dietary goals. With perhaps the best of intentions agencies of government charged with promoting the food supply and the rights of consumers have paradoxically limited the information to make healthful choices in an area that means a great deal to over 100 million people.[10]

The DSHEA explicitly exempts a category of claims from the FDA pre-authorization process, so-called "structure/function" statements (such as "Calcium builds strong bones") which involve the way in which a nutrient affects the function or structure of the body. 21 U.S.C. § 343(r)(6). A structure/function claim is permitted so long as the FDA is notified, the manufacturer has substantiation that the claim is truthful and not misleading, and the product contains a disclaimer.[11] Moreover, the DSHEA lays the groundwork for new standards and pro-

Register.... FDA will publish the proposal to amend the regulations to provide for the requested use of the health claim in the Federal Register within 90 days of the date of filing. The proposal will also announce the availability of the petition for public review.
28 C.F.R. § 101.70(j) (1994).

7. Once a health claim is approved by the FDA, others may use that claim without further FDA involvement.

8. Pub.L. No. 103–417, 108 Stat. 4325 (1994). The DSHEA defined dietary supplements in section 3 (codified at 21 U.S.C. § 321(ff) (1994)).

9. Congress also found:

(2) the importance of nutrition and the benefits of dietary supplements to health promotion and disease prevention have been documented increasingly in scientific studies; ...
(3)(A) there is a link between the ingestion of certain nutrients or dietary supplements and the prevention of chronic diseases such as cancer, heart disease, and osteoporosis; ...

(5) preventive health measures, including ... appropriate use of safe nutritional supplements will limit the incidence of chronic diseases, and reduce long-term health care expenditures; ...
(14) dietary supplements are safe within a broad range of intake, and safety problems with the supplements are relatively rare; and
(15)(A) legislative action that protects the right of access of consumers to safe dietary supplements is necessary in order to promote wellness; ...
P.L. 103–417 § 2; 21 U.S.C.A. § 321 note (West Supp.1995).

10. Statement by President Clinton upon signing S. 784, 1995 U.S.C.C.A.N. 3523–1 (Oct. 25, 1994).

11. The following disclaimer must accompany structure/function claims: "This statement has not been evaluated by the Food and Drug Administration. This product is not intended to diagnose, treat, cure or prevent any disease." 21 U.S.C. § 343(r)(6)(C) (1994).

cedures to replace the FDA pre-approval framework being challenged in this action. These are presently under consideration.

■ At the threshold, the Government contends that the Court need not reach the merits of the case because plaintiffs do not have standing. However, I find standing, agreeing with the district court's holding in *NCIH* with respect to this question:

> In this case, the plaintiffs' facial challenge of the health claims regulations implicates the First Amendment. Additionally, as was the case in Forsyth, every application of the challenged regulations could impermissibly suppress protected speech. Therefore, in light of the expanded notion of standing under the "overbreadth doctrine," this Court determines that plaintiffs have standing to challenge the health claims regulations.

*NCIH*, 893 F.Supp. at 1516. I also agree with *NCIH*, that the speech here is commercial. *Id.*

■ I turn, therefore, to the four-prong test established in *Central Hudson Gas & Electric Corp. v. Public Serv. Comm'n of New York*, 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980), for determining whether particular regulations of commercial speech survive scrutiny under the First Amendment: [12]

> (1) Whether the speech is *misleading* (if it is misleading or unlawful, no further inquiry is needed and the speech may be restricted);

(2) Whether the government's asserted interest in regulating the speech is *substantial;*

(3) Whether the restraint *directly advances* the government's interest; and

(4) Whether the legislation is *no more extensive* than necessary to serve the government's interest.

*Id.* at 566, 100 S.Ct. at 2351.

The first three *Central Hudson* prongs require only brief comment. Under the first prong, if the speech is misleading, it can be prohibited. Although the Government argues that health claims that have not been FDA approved are inherently misleading, not all potential health claims are misleading; at least some can be presented in a non-misleading fashion.[13] Accordingly, like the court in *NCIH*, I hold that plaintiffs clear this first *Central Hudson* hurdle. *NCIH*, 893 F.Supp. at 1516.

The second *Central Hudson* prong, whether there is a substantial governmental interest, is clearly met in this case. *NCIH*, 893 F.Supp. at 1518. The legislative history of these provisions reveals that substantial governmental interests drive the NLEA and implementing regulations: preventing the spread of unsubstantiated health claims on labels so that consumers may not be deceived and follow unsound health practices; ensuring the reliability of scientific information disseminated in connection with the sale of dietary supplements; and protecting consumers from being induced to purchase products by misleading information on labels.

The third *Central Hudson* prong addresses whether the NLEA and FDA regulations

---

**12.** Although three Justices of the Supreme Court have recently stated that "[t]he mere fact that messages propose a commercial transactions does not in and of itself dictate the constitutional analysis that should apply to decisions to suppress them," *44 Liquormart, Inc. v. Rhode Island*, ⸺ U.S. ⸺, ⸺, 116 S.Ct. 1495, 1506–07, 134 L.Ed.2d 711 (1996) (STEVENS, J., for three Justices), I note that this case fits squarely within those situations in which these Justices believe the less strict test applies:

> When a State regulates commercial messages to protect consumers from misleading, deceptive, or aggressive sales practices, or requires the disclosure of beneficial consumer information, the purpose of its regulation is consistent with the reasons for according constitutional

protection speech and therefore justifies less than strict review.

*Id.; but see id.,* at ⸺, 116 S.Ct. at 1521 (O'CONNOR, J., for four Justices) ("I would resolve this case more narrowly, however, by applying our established *Central Hudson* test to determine whether this commercial-speech regulation survives First Amendment scrutiny.").

**13.** Plaintiffs offer examples of non-misleading information: "A study published in the American Medical Journal reports that Vitamin E supplements may reduce the progression of coronary artery disease. This is not an established fact and is still being studied." Pl.Mem. in Opposition at 37.

directly advance the Government's substantial interests, and as noted in *NCIH,* the Supreme Court recently articulated the Government's burden: "The government carries the burden of proving the direct and material advancement of its interests.... [The government] seeking to sustain a restriction on commercial speech must demonstrate that the harms it recites are real and that its restrictions will in fact alleviate them to a material degree." *NCIH,* 893 F.Supp. at 1518. Here too, I agree with the *NCIH* holding that the Government has shown that the NLEA and FDA regulations directly and materially advance their substantial interests.

It is the fourth *Central Hudson* prong that requires considerable discussion. A regulation may be no more extensive than necessary to serve the Government's interests. The least restrictive means of regulation is not what is required, but rather a "reasonable fit" between the regulation and the Government's interests at issue: "[W]e have not insisted that there be no conceivable alternative, but only that the regulation not burden substantially more speech than necessary to further the government's legitimate interests." *Board of Trustees of State University of N.Y. v. Fox,* 492 U.S. 469, 478, 109 S.Ct. 3028, 3034, 106 L.Ed.2d 388 (1989) (internal quotation marks and citations omitted).

NHA's attack on the "spectrum of speech encompassed" is unpersuasive. The FDA's comments from the final dietary supplement regulations illustrate that the "spectrum of speech" involved does not offend the First Amendment:

> The means that FDA has chosen to further its substantial interests are reasonable, "in proportion to the interests served," and "narrowly tailored to achieve the desired objectives".... The regulations specifically target labeling claims about relationships between substances and disease or health-related conditions. They are not intended to restrict the flow of information to the public, but rather to ensure that the scientific validity of the information provided to consumers in the labeling of a product has been established.

> Indeed, the regulations leave open a broad range of other communication.

59 Fed.Reg. at 423.

It is, however, the absence of any deadline whatsoever for the final authorization of a proposed health claim which the FDA has already preliminarily determined to be valid, which I conclude, fails to meet *Central Hudson's* fourth prong, and thus violates the First Amendment. NHA states:

> [A]fter the initial proposal, *FDA is under no time restriction whatsoever*—there is no deadline—FDA can simply publish a proposed health claim and then allow it to languish for years. There is no statutory time limit requiring FDA to complete its actual consideration of a proposed health claim and to publish it in the Federal Register in final form.

Pl.Mem. in Opposition at 19. Plaintiffs are correct in their analysis of the applicable time frame. The FDA has a total of 190 days to issue a denial or publish a *proposed* regulation, but there is absolutely no deadline for a final regulation. The FDA considered several alternatives, including that the agency issue a final rule authorizing or prohibiting a health claim within 120 days of publication of the proposal, but rejected these recommendations based on its position that a deadline was neither required nor desirable. The FDA in this area asserts the following:

> The comments maintained that the new [proposed] provision [which mandates a specific deadline for a final rule] would correct an obvious oversight in the existing regulations, i.e., the establishment of a firm deadline for a proposed rule but no firm deadline for a final rule.... FDA advises that its failure to specify in s101.70(j) a deadline for the publication of a final rule regarding the use of a proposed health claim *was not an oversight.* Section 403(r)(4)(A)(i) does not require that the agency adhere to any deadline for the publication of a final rule. *While FDA could establish such a timeframe by regulation, it does not believe that the adoption of such a requirement would be prudent.* The comment period following the publication of proposed rules is a critical step in

determining whether a proposed regulation is appropriate for adoption. In the instance of health claim regulations, significant information concerning the validity of the substance-disease relationship underlying the proposed health claim may be submitted by interested parties during the comment period. Also, the comment period may bring to light a previously unforeseen potential for the use of a health claim, if adopted without modification, to be misleading to consumers or to create serious potential threats to the public health. *The agency has no way to guarantee that it will be able to adequately resolve such problems within the suggested time frame. In such instances, if faced with a specific timeframe, FDA would be forced to either deny an otherwise valid health claim petition, or to approve it without erecting the regulatory framework that it believes necessary to ensure that the public health is safeguarded.* Therefore FDA is not adopting the suggested time limit on the issuance of a final rule. However, the agency advises that it is committed to issuing final rules on health claim petitions as quickly as possible consistent with the issues presented and the agency's available resources.

59 Fed.Reg. at 420 (emphasis added).

I do not question the FDA's assurance that it is committed to issuing final regulations "as quickly as possible," but the First Amendment requires more. Health claim petitions that reach this stage have been preliminarily determined by the agency to be supported by significant scientific agreement. By this point in the process, within 190 days of the petition, the FDA has already gathered, reviewed, and analyzed the pertinent scientific information, and the agency expects that, absent significant problems being raised

during the public comment period, the proposed claim will become final.

The First Amendment does not permit the FDA to prohibit this speech (presumptively valid, non-misleading health claims that have been preliminarily determined to be supported by significant scientific agreement) for an indefinite period. I deem this to be so regardless of the motivation, whether it be a possible valid one such as new—perhaps contrary—input,[14] or an impermissible ground, such as failure of agency attention, or a delay due to agency understaffing. Thus, the lack of a firm deadline for the publication of final rules is not a "reasonable fit."[15] The Supreme Court stated in *Fox* that "almost all of the restrictions disallowed under *Central Hudson's* fourth prong have been substantially excessive, disregarding 'far less restrictive and precise means.'" *Fox,* 492 U.S. at 479, 109 S.Ct. at 3034. Here there is a less restrictive and more precise alternative, namely the establishment of a firm deadline. Despite the FDA's position that the adoption of a deadline would not be "prudent," it is constitutionally required.

The Government argues that if significant time has passed after the publication of a proposed rule without the implementation of a final rule, a petitioner could sue the FDA under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 555(b), 702, 706(1), on the grounds that there has been unreasonable delay. Def.Supplemental.Mem. at 3; *see also Cutler v. Hayes,* 818 F.2d 879, 894–899 (D.C.Cir.1987). This potential remedy under the APA does not however cure the constitutional deficiency in this regulatory scheme, nor is it equitable to impose the costs of initiating litigation upon a petitioner whose claim is presumptively supported by significant scientific agreement (in as much as the FDA has issued a proposed rule), and who has already invested considerable time and resources in the authorization process.[16]

---

**14.** This could be handled by an extension, founded on a showing of cause.

**15.** The court in *NCIH,* found that "reasonable time requirements are imposed," but the court did not address the lack of a final deadline. *NCIH,* 893 F.Supp. at 1519–1520.

**16.** I neither find nor imply that the FDA has unreasonably delayed analysis of health claim

petitions. Eight petitions, including food and dietary supplement petitions, have been filed with the FDA since 1993. Three were denied within the first 100 days, one was denied within the next 90 days, and two were the subject of proposed rules, one of which was implemented as a final rule within two months of the proposed rule. Def.Supplemental.Mem. at 4–5, App. A–B; Letter from William B. Schultz, Deputy Commis-

Accordingly, a reasonable deadline must be established. I deem it inappropriate in the first instance, for the Court to impose such a deadline. Given the complexity and extensiveness of the regulatory scheme and the scientific expertise involved, I believe the fixing of an appropriate deadline is more properly left to the Secretary of Health and Human Services and the FDA. *See generally Heckler v. Day,* 467 U.S. 104, 119, 104 S.Ct. 2249, 2257, 81 L.Ed.2d 88 (1984) ("[I]t would be an unwarranted judicial intrusion into this pervasively regulated area for federal courts to issue injunctions imposing deadlines with respect to future disability claims."). Thus, the Secretary is directed to establish and submit to the Court for approval, a reasonable time limit for the promulgation of a final rule for a health claim on dietary supplement labels.[17] The Secretary shall, within 90 days of this order, submit such regulation to me for review of its reasonableness and the entry of such further orders as may be appropriate.

Accordingly, I deny defendants' motion to dismiss the complaint and grant NHA's motion for summary judgment to the extent set forth above.

sioner for Policy of the FDA, to Jerome J. Kozak, Senior Vice President of International Dairy Foods Association (July 11, 1996) (regarding denial of health claim petition on the relationship between dietary calcium and hypertension); Proposed Rule On Relationship Between Oat Products and Coronary Heart Disease, 61 Fed.Reg. 296 (1996) (proposed Jan. 4, 1996); Proposed Rule on Relationship Between Sugar Alcohols and Nonpromotion of Dental Carries, ·60 Fed. Reg. 37507 (1995) (proposed July 7, 1995); Relationship Between Sugar Alcohols and Nonpromotion of Dental Carries, 61 Fed.Reg. 43433 (1996) (to be codified at 21 C.F.R. § 101.80).

The thoroughness of the scientific research and analysis published with the two proposed regulations, and the fact that less than two months passed between the proposed rule for sugar alcohols and the final rule illustrate the agency's capability in the health claim authorization process.

17. A similar approach was taken in *Gonzalez v. Freeman,* 334 F.2d 570, 577–580 (D.C.Cir.1964) (Burger, J.) and *Blankenship v. Secretary of HEW,* 587 F.2d 329, 336 (6th Cir.1978).