**NUTRITIONAL HEALTH ALLIANCE and Soo Man Shim, d/b/a New Nutrisserie, Plaintiffs–Appellants,**

v.

**Donna SHALALA, in her official capacity as Secretary, U.S. Department of Health and Human Services, and David Kessler, Commissioner, Food and Drug Administration, Defendants–Appellees.**

**Docket No. 97–6246.**

United States Court of Appeals, Second Circuit.

Argued April 23, 1998.

Decided May 15, 1998.

Milton A. Bass, Bass & Ullman, P.C., New York City (John M. Desiderio, Jacob Laufer, Marc Ullman), for Plaintiffs–Appellants.

Kay K. Gardiner, Assistant United States Attorney, for Mary Jo White, United States Attorney for the Southern District of New York (Marla Alhadeff, Assistant U.S. Attorney), for Defendants–Appellees.

Steven J. Rosenbaum, Covington & Burling, Washington, DC (James H. Skiles), for Amicus Curiae, Grocery Manufacturers of America, Inc., in support of Plaintiffs–Appellants.

David C. Vladeck, Public Citizen Litigation Group, Washington, DC; Bruce Silverglade, Center for Science in the Public Interest, Washington, DC, for Amici Curiae, The American Cancer Society; American Heart Association; Center for Science in the Public Interest; Public Citizen; and the Consumer Federation of America, in support of Defendants–Appellees.

Before: WALKER, CALABRESI, Circuit Judges, and RESTANI,* Judge.

CALABRESI, Circuit Judge:

The principal question before us is whether plaintiffs-appellants may challenge the statute and regulations governing the labeling of dietary supplements [1] before they have submitted any proposed health claims to the Food and Drug Administration ("FDA") pursuant to the regulations and before the FDA has undertaken any enforcement action against them.

Plaintiffs-appellants Nutritional Health Alliance ("NHA"), a nonprofit association of consumers, health professionals, natural product retailers, and natural product manufacturers, and New Nutrisserie, a natural product retailer that also markets a line of private label dietary supplement products, brought a facial First Amendment challenge to the statute and regulations against defendants-appellees Donna Shalala, Secretary of the U.S. Department of Health and Human Services, and David Kessler, then Commissioner of the FDA. The plaintiffs sought declaratory and injunctive relief. The defendants moved to dismiss for lack of standing, pursuant to Fed.R.Civ.P. 12(b)(1), and for failure to state a claim upon which relief could be granted, pursuant to Fed.R.Civ.P. 12(b)(6). Plaintiffs cross-moved for summary judgment.

The United States District Court for the Southern District of New York (Richard Owen, Judge) found that the plaintiffs had standing, denied defendants' motion to dismiss, and, in view of the absence of a deadline for final agency action under the statute and regulations, granted plaintiffs' summary judgment motion in part. In all other respects, the district court upheld the regulatory scheme as constitutional. *See NHA v. Shalala*, 953 F.Supp. 526 (S.D.N.Y.1997).

In response to the district court's ruling, the government established a regulatory deadline within which the FDA had to ap-

---

1. Nutrition Labeling and Education Act of 1990, Pub.L. No. 101–535, 104 Stat. 2353, codified as amended at 21 U.S.C. §§ 301, 321, 337, 343, 371; 21 C.F.R. §§ 101.14, 101.70.

prove or disapprove any proposed health claim. And the district court found this timetable acceptable. *See NHA v. Shalala*, No. 95 Civ. 4950 (S.D.N.Y. Aug. 14, 1997) (unpublished Memorandum & Order). The court then denied the balance of the plaintiffs' motion, and entered judgment for defendants. *See NHA v. Shalala*, No. 95 Civ. 4950 (S.D.N.Y. Sept. 18, 1997) (unpublished Order). Plaintiffs appealed from this final judgment to the extent (1) that it denied plaintiffs' motion for summary judgment, and (2) that it incorporated previous court orders upholding the constitutionality of the government's regulatory deadline.

I. BACKGROUND

In 1990, Congress enacted the Nutrition Labeling and Education Act ("NLEA"), which amended the Federal Food, Drug and Cosmetic Act. *See* Pub.L. No. 101–535, 104 Stat. 2353 (1990), *codified as amended at* 21 U.S.C. §§ 301, 321, 337, 343, 371. The NLEA was passed to "clarify and to strengthen the Food and Drug Administration's legal authority to require nutrition labeling on foods, and to establish the circumstances under which claims may be made about the nutrients in foods." *See* H.R.Rep. No. 101–538, at 7 (1990), *reprinted in* 1990 U.S.C.C.A.N. 3336, 3337.

At issue in this case are the NLEA provisions that permit the FDA to limit the health claims that may be made on dietary supplement labels.[2] In 1993, the FDA promulgated regulations (pursuant to the NLEA) that require persons desiring to make health claims on labeling[3] of dietary supplements to petition the FDA for authorization to make such a claim.[4] The regulations state that the FDA will allow health claims to be made only when "there is significant scientific agreement ... that the claim is supported by [the scientific] evidence." 21 C.F.R. § 101.14(c).[5] If the FDA finds that a proposed nutrient-disease relationship is supported by significant scientific agreement among experts, it will promulgate, through notice and comment procedures, a regulation authorizing claims to be made about that relationship. *See id.* § 101.14(d)(1). If by contrast, the FDA determines that such agreement does not exist among experts, the claim will not be permitted on labels.

With respect to nutrient-disease claims, the FDA has adopted the following procedures and timetables: First, a party submits a petition with the proposed health claim and attached supporting evidence. The FDA must notify the applicant within 100 days whether the request will be denied or else "filed" for further review. Within the next 90 days, the FDA is required to deny the petition or else to publish a proposed regulation authorizing the health claim. *See id.* § 101.70(j). And within 270 days of the date of publication of a proposed rule authorizing a health claim, the FDA must publish a final

2. Specifically, the statute provides that a health claim on labeling

> made with respect to a dietary supplement of vitamins, minerals, herbs, or other similar nutritional substances ... shall be subject to a procedure and standard, respecting the validity of such claim, established by regulation of the Secretary.

21 U.S.C. § 343(r)(5)(D). In response to this mandate, the FDA promulgated 21 C.F.R. §§ 101.14, 101.70.

3. The Federal Food, Drug and Cosmetic Act defines "labeling" as "all labels and other written, printed, or graphic matter (1) upon any article or any of its containers or wrappers, or (2) accompanying such article." 21 U.S.C. § 321(m).

4. Nothing in either the statute or regulations restricts the sale of dietary supplements. See 59 Fed.Reg. 395, 396 (1994). Nor does the FDA control the contents of books, magazines, or non-label advertising. The regulation of general advertising of dietary supplements is, instead, within the purview of the Federal Trade Commission, which evaluates ads under a "truthful and non-misleading" standard. *See* 21 U.S.C. § 343(a).

5. The provision reads, in pertinent part, that the FDA will authorize a claim only when it

> determines, based on the totality of publicly available scientific evidence (including evidence from well-designed studies conducted in a manner which is consistent with generally recognized scientific procedures and principles), that there is significant scientific agreement, among experts qualified by scientific training and experience to evaluate such claims, that the claim is supported by such evidence.

21 C.F.R. § 101.14(c).

regulation approving or denying the claim. *See id.* § 101.70(j)(4).[6]

In 1994, Congress moved to narrow the reach of the FDA's preauthorization scheme, out of "[c]oncern over excessive regulation of dietary supplements and the suppression of truthful information." NHA v. Shalala, 953 F.Supp. at 528. In the Dietary Supplement Health and Education Act of 1994 ("DSHEA"), Pub.L. No. 103–417, 108 Stat. 4325 (amending the NLEA), it allowed certain health claims for dietary supplements to be made without petitioning the FDA. These included: (1) statements asserting a benefit related to a classical nutrient deficiency disease; (2) claims about the role of a nutrient or dietary ingredient with respect to the structure or function of the human body ("structure/ function claims"); and (3) declarations of general well-being from consumption of a nutrient or other dietary ingredient. *See* 21 U.S.C. § 343(r)(6)(A). Under the DSHEA, such claims are permitted if the manufacturer has "substantiation" that the assertion is truthful and non-misleading, if the label expressly states, *inter alia,* that the FDA has not evaluated the claim, and if the FDA was notified within 30 days of the first marketing of the product that bears the claim. *See id.* § 343(r)(6)(B), (C).[7] In addition, DSHEA created an exemption for "third-party literature" under which manufacturers, without prior FDA approval, may, "in connection with the sale of a dietary supplement," provide consumers with publications such as articles, chapters from books, or abstracts from scientific publications. *See id.* § 343–2.[8]

Despite DSHEA's amendments, it nonetheless remains true that, generally, "emerging health claims" are barred from labels absent prior approval by the FDA.[9] And use of an unauthorized claim subjects the company and its officers to criminal prosecution for issuing a "misbranded" product. *See id.* §§ 331, 333, 343(a)(1), 343(r)(1)(B).

6. Before plaintiffs brought their action, there was no deadline (imposed either by statute or by regulation) by which the FDA had to publish a final regulation approving or denying the health claims. The above deadline was developed pursuant to the district court's order to the FDA. The 270 day period is composed of: (1) 75 days for public comment; (2) 150 days for the FDA to consider the comments received, perform any additional analysis based on the comments, respond to the comments, and draft the final rule; (3) 30 days for the review of the final regulation by the Commissioner of the FDA or the Secretary of Health and Human Services; and (4) 15 days for administrative slippage.

This scheme gives the FDA at least 460 days from the time when a petition is submitted before it must publish a final regulation. An additional provision that allowed the agency to extend this deadline for two additional 90 day periods if it showed sufficient need extended the review period to 640 days. *See* 21 C.F.R. § 101.70(j)(4)(ii). The Food and Drug Administration Modernization Act of 1997, Pub.L. No. 105–115, 111 Stat. 2296 (relevant provisions effective February 19, 1998), has, however, added a new statutory deadline to require that if the FDA issues a proposed regulation approving a health claim, final action must be taken within 540 days of the date that the petition was originally received by the FDA. *See* 21 U.S.C. § 343(r)(4)(A)(i). (If the FDA does not meet this deadline, it must provide Congress with the "reasons action on the regulation did not occur within such 540 days." *Id.*)

7. Such a statement "may not claim to diagnose, mitigate, treat, cure, or prevent a specific disease or class of diseases." 21 U.S.C. § 343(r)(6).

8. These publications, however, may not be false or misleading, may not promote a particular manufacturer or brand of dietary supplement, and may not have appended to them any stickers or other additions. *See* 21 U.S.C. § 343–2(a).

9. The Food and Drug Administration Modernization Act, Pub.L. No. 105–115, 111 Stat. 2296, does allow claims to be made on labels if they are supported by "an authoritative statement" of certain entities. Thus if some other "scientific body of the United States government, with official responsibility for health protection or research directly relating to human nutrition," or the National Academy of Sciences publishes an authoritative statement about the relationship between a nutrient and a disease or health-related condition, a claim may be made on labels provided that a 120–day pre-marketing notice is given to the FDA. *See id.* § 303, 21 U.S.C. § 343(r)(3)(C)(i),(ii). According to the government, the newly enacted provisions apply only to conventional foods, and not to dietary supplements, but in the past the FDA has applied, by regulation, the same standards and procedures to health claims on dietary supplement labeling as to those on conventional food labeling. *See* 59 Fed.Reg. 395 (Jan. 4, 1994). The FDA, however, has not yet issued any proposed regulations indicating whether the "authoritative statement" exception will be applied to dietary supplement labeling.

## II. DISCUSSION

■ Plaintiffs make two principal claims on appeal. First, they argue that the statute and regulations violate the strictures of *Central Hudson Gas & Electric Corp. v. Public Service Commission,* 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980), and impose an impermissible ban on truthful, non-misleading commercial speech.[10] Second, they claim that the preauthorization scheme required by the FDA for all health claims (including those eventually approved by the FDA) constitutes an unconstitutional prior restraint on commercial speech.

The government renews its argument—rejected below—that the plaintiffs, since they have not identified to this court or to the FDA a single health claim that they actually wish to make and are prevented from putting on a label by the regulations, lack standing to bring this suit. If the suit were nonetheless deemed justiciable, the government argues that the district court was correct in its finding that the regulatory scheme passes muster under Central Hudson. The government further urges us to reject the plaintiffs' second argument on the ground that the prior restraint doctrine is inapplicable to commercial speech.

### A. General Challenge to the NLEA: Justiciability

■ We must first consider whether plaintiffs' preenforcement facial First Amendment challenges to the NLEA and its regulations are ripe for our review. Ripeness is a constitutional prerequisite to exercise of jurisdiction by federal courts. *See Abbott Labs. v. Gardner,* 387 U.S. 136, 148–49, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); *Thomas v. City of New York,* 143 F.3d 31, 34–35 (2d Cir.1998). The court, therefore, can raise the issue *sua sponte. See Thomas,* 143 F.3d at 34. In evaluating whether a declaratory judgment action is ripe, we con-

sider (1) the fitness of the issues for judicial review, and (2) the injury or hardship to the parties of withholding judicial consideration. *See Abbott Labs.,* 387 U.S. at 149, 87 S.Ct. at 1515–16.

### 1. Fitness for Judicial Review

■ To determine fitness for judicial review, we must examine, among other factors, whether "consideration of the underlying legal issues would necessarily be facilitated if they were raised in the context of a specific attempt to [apply and/or] enforce the regulations." *Gardner v. Toilet Goods Assoc.,* 387 U.S. 167, 171, 87 S.Ct. 1526, 1528–29, 18 L.Ed.2d 704 (1967); *see In re Combustion Equip. Assoc., Inc.,* 838 F.2d 35, 37–38 (2d Cir.1988); *see also Abbott Labs.,* 387 U.S. at 149, 87 S.Ct. at 1515 (concluding that "the issues presented are appropriate for judicial resolution at this time," where the facial challenge to the regulation involved the purely legal question of whether the regulation at issue exceeded the scope permitted by the underlying statute).

■ In the instant case, plaintiffs' complaint did not allege any particular health claims that plaintiffs wished to state. Nor did plaintiffs contend that they had ever sought the FDA's authorization to make any such health claim on dietary supplement labels and that permission had been denied or delayed by the FDA.

In the absence of any specific proposed health claim, it is extremely difficult for the court to conduct a *Central Hudson* analysis. Speech that is found to be non-truthful or misleading is not constitutionally protected under the first prong of the *Central Hudson* test. *See Central Hudson,* 447 U.S. at 566, 100 S.Ct. at 2351 ("At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it

---

**10.** The four-pronged test for the regulation of commercial speech is:

(1) Whether the speech is misleading or does not "concern lawful activity," in which case no further inquiry is needed and the speech may be restricted;

(2) Whether the government's asserted interest in regulating the speech is substantial;

(3) Whether the restraint directly advances the government's interest; and

(4) Whether the legislation is no more extensive than necessary to serve the government's interest. *See Central Hudson,* 447 U.S. at 566, 100 S.Ct. at 2351.

at least must concern lawful activity and not be misleading."). And, as the Tenth Circuit noted in the context of a First Amendment challenge to the same statute and regulations as those in the instant case,

> a critical issue in evaluating the constitutionality of commercial speech is whether the speech at issue is truthful or misleading. Without knowing what claims plaintiffs seek to disseminate, this court cannot assess whether such claims are truthful and not misleading. Therefore, an analysis of this issue would rest on mere speculation.

*National Council for Improved Health v. Shalala,* 122 F.3d 878, 883 n. 7 (10th Cir. 1997) (citation omitted).

We agree with the Tenth Circuit.[11] For, without a specific proposed health claim to review, on evidence of record before the FDA, we cannot determine whether the "significant scientific agreement" requirement actually bars any truthful, non-misleading speech. In particular, we note that the parties have here argued at length over whether hypothetical health claims would, when combined with disclaimers of FDA acceptance, be misleading. That question seems to turn in part on whether the claims would confuse consumers with respect to possible side effects. And this issue is particularly difficult to resolve in the abstract and without a full record. We, therefore, conclude that plaintiffs' claim that the NLEA and FDA regulations ban certain categories of commercial speech in violation of the First Amendment is preferably deemed not to be ready for judicial review.

---

**11.** The Tenth Circuit dismissed the case before it as nonjusticiable because plaintiffs lacked standing. In our view, dismissal was correct, but the justiciability question is best seen as one of ripeness. *See* Erwin Chemerinsky, Federal Jurisdiction § 2.4, at 115 ("Ripeness properly should be understood as involving the question of *when may a party seek preenforcement review of a statute or regulation.*").

**12.** "The relationship between these two parts of the test—fitness and hardship—has never been precisely defined." *Ernst & Young v. Depositors Econ. Protection Corp.,* 45 F.3d 530, 535 (1st Cir.1995). *Compare Cedars–Sinai Med. Ctr. v. Watkins,* 11 F.3d 1573, 1581 (Fed.Cir.1993) (holding that, in order to be ripe, a dispute must

*2. Hardship to the Parties*

Even if resolution of a dispute could be facilitated if a court waited for a specific application of the issues in contention, the question may, nonetheless, perhaps be justiciable under the second ripeness factor if the challenged action creates a direct and immediate hardship for the parties.[12] In the instant case, it is undisputed that if plaintiffs do not comply with the statute and regulations, they are subject to criminal liability. *See* 21 U.S.C. §§ 331, 333, 343(a)(1), 343(r)(1)(B). It is, moreover, also true that traditional ripeness analysis has been relaxed somewhat in cases involving facial challenges based on First Amendment grounds. *See Sanger v. Reno,* 966 F.Supp. 151, 161 (E.D.N.Y.1997) (collecting cases). We must, therefore, examine what specific harm, if any, will be done to the plaintiffs if judicial review is withheld until such time as they have submitted an actual health claim to the FDA. Plaintiffs have alleged much less hardship than the plaintiffs in *Abbott Laboratories.* In that case, a number of drug companies brought a facial challenge to an FDA regulation requiring the inclusion of generic names for prescription drugs on labels and other printed materials. The Supreme Court observed that "[i]f petitioners wish to comply [with the FDA regulation] they must change all their labels, advertisements, and promotional materials; they must destroy stocks of printed matter; and they must invest heavily in new printing type and new supplies." *Abbott Labs.,* 387 U.S. at 152, 87 S.Ct. at 1517. Plaintiffs in the instant case,

---

meet both prongs of *Abbott Laboratories* ), *with* Laurence H. Tribe, American Constitutional Law § 3–10, at 80 (2d ed. 1988) ("Cases in which early legal challenges *are* held to be ripe normally present either or both of two features: significant *present* injuries produced by contemplation of a future event; or legal questions that do not depend for their resolution on an extensive factual background."). For purposes of deciding the instant case, we need not define the contours of the ripeness test. Nonetheless, "[w]e acknowledge the possibility that there may be some sort of sliding scale under which, say, a very powerful exhibition of immediate hardship might compensate for questionable fitness ... or vice versa." *Ernst & Young,* 45 F.3d at 535.

however, have alleged no such hardship if we were not to review their claim on the merits.

■ In fact, the only real burden that denying immediate judicial review imposes on the plaintiffs before us is that they are subjected to a potential 540–day prior restraint while their claim is evaluated.[13] Such a burden does not suffice to render ripe a dispute that is as manifestly unfit for decision as this one is. It may, however, on its own constitute a valid constitutional claim. In effect, then, the second ripeness factor in the case before us becomes the same as plaintiffs' second claim—that the statute and regulations impose an unconstitutional prior restraint.

## B. Prior Restraint Challenge

### 1. Ripeness

■ We note first that this claim is clearly ripe. It involves a purely legal question that is eminently fit for judicial review. Plaintiffs will necessarily be subjected to the prior restraint as a result of our conclusion that we will not consider their underlying argument until they submit an actual health claim for FDA approval. This follows from the fact that even those claims that will eventually be authorized by the FDA—and that are pre-

sumably truthful—are nevertheless subject to the allegedly unconstitutional FDA pre-clearance procedure. We therefore can consider this second challenge on the merits.[14] See FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 223–25, 110 S.Ct. 596, 603–05, 107 L.Ed.2d 603 (1990) (permitting facial challenge to prior restraint).

### 2. Merits

■ Plaintiffs contend that the NLEA/FDA requirement for prior approval of all health claims appearing on dietary supplement labels (including those that the FDA eventually approves, and are thus presumably truthful and non-misleading) is an unconstitutional prior restraint of commercial speech.[15] The government counters that the prior restraint doctrine does not apply to commercial speech.

The government's contention is, however, overbroad. For our court has stated that the prior restraint doctrine does play a role in evaluating the regulation of commercial speech. As we explained in New York Magazine v. MTA, 136 F.3d 123 (2d Cir.1998):

Although the Supreme Court has indicated that commercial speech may qualify as one of the exceptions to the bar on prior

---

**13.** Plaintiffs have appealed the district court's approval of the regulatory deadline giving the FDA 460 days before it must publish a final regulation. (That deadline is subject to two possible 90–day extensions). Subsequent to plaintiffs' appeal, Congress added a new statutory deadline of 540 days. See supra note 6. According to the government, "the Modernization Act did not 'set aside' the time limits for FDA action on health claims, which are prescribed by regulations that remain binding." Gov't Br. at 10 n.*. We, nevertheless, will take the statutory deadline of 540 days as the length of the prior restraint. And because the statutory deadline does not differ significantly from the regulatory deadline ruled on by the district court, we construe plaintiffs' prior restraint claim as challenging this statutory deadline period. See Florida Gen. Contractors v. Jacksonville, 508 U.S. 656, 662 n. 3, 113 S.Ct. 2297, 2301 n. 3, 124 L.Ed.2d 586 (1993) (holding that a case where a challenged statute was repealed and replaced with another one is not moot where "the new ordinance is sufficiently similar to the repealed ordinance that it is permissible to say that the challenged conduct continues").

**14.** There is also no doubt that plaintiffs have standing to raise the prior restraint claim. The

delay that they will face as soon as they submit a proposed health claim to the FDA constitutes a concrete injury in fact. For during the 540–day FDA review period the manufacturers and retailers will be prohibited from giving, and the consumers prevented from receiving, information allegedly protected by the First Amendment.

**15.** Plaintiffs have not alleged in their complaint that they wish to make a health claim that falls within one of the DSHEA exemptions to the FDA prior approval scheme. But there is some disagreement between plaintiffs and the government as to whether one of plaintiffs' hypothetical claims in their brief—"[T]ake Vitamin A if you have a Vitamin A deficiency"—is exempt under the 21 U.S.C. § 343(r)(6) classical nutrient deficiency disease exemption. If plaintiffs wish to make a claim that they think falls within one of the DSHEA exemptions, they are permitted to do so as long as they notify the FDA within 30 days of marketing the product. There is thus no prior restraint imposed on plaintiffs in this context. And such a claim presumably would be ripe for review only after the FDA took some action to bar the claim after it had been made.

restraints, *see Central Hudson,* 447 U.S. at 571 n. 13, 100 S.Ct. at 2354 n. 13, we see no reason why the requirement of procedural safeguards [in prior restraint cases] should be relaxed whether speech is commercial or not. . . .

In fact, the test that the Supreme Court regularly applies to commercial speech supports continuing to require procedural safeguards for prior restraints even where commercial speech is involved. That test requires us to consider "whether the regulation . . . is not more extensive than is necessary to serve [the asserted governmental] interest."

*Id.* at 131–32 (citations omitted).

The critical question is, therefore, whether the prior restraint of up to 540 days is acceptable under the fourth prong of *Central Hudson.* In this respect, it is significant that the speech involved is indisputably "pure commercial" speech, and that the regulation pertains to health and safety.[16] Under the circumstances, and given the need to protect consumers before any harm occurs, we conclude that the 540–day prior restraint is sufficiently narrowly tailored. It grants a limited, but reasonable, time within which the FDA can evaluate the evidence in support of labeling claims. And it allows for the development of a record on the matter so that a court can determine whether the regulated speech is, in fact, truthful and non-misleading, as is required by the first prong of the Central Hudson test. Significantly, the statutory scheme does not "place[ ] unbridled discretion in the hands of" the FDA to evaluate proposed claims, which is another evil prohibited by prior restraint doctrine. *FW/PBS, Inc.,* 493 U.S. at 225–26, 110 S.Ct. at 604–05 (internal quotation marks and citation omitted). For the "significant scientific agreement" standard for evaluating claims is

sufficiently definite to constrain the FDA within reasonable bounds.

We agree with the district court's earlier decision, in effect holding that the absence of a final deadline constituted a prior restraint of unlimited duration, and that without such a deadline, the preauthorization scheme would not pass constitutional muster. *See NHA v. Shalala,* 953 F.Supp. at 530. But we also find that a restraint of up to 540 days, in the context of evaluating, pursuant to defined standards, whether commercial health claims are truthful and non-misleading, is constitutionally valid.[17]

### III. CONCLUSION

We, therefore, hold that plaintiffs' first claim—that the NLEA and FDA regulations impose an unconstitutional ban on certain categories of speech—is not ripe for review. Plaintiffs' second claim—that the regulatory scheme constitutes an unconstitutional prior restraint on speech—is ripe for review, and we hold that the 540–day prior restraint is, in this context, constitutional. Accordingly, we AFFIRM the part of the judgment below that approved the FDA's regulatory deadline, we VACATE the part of the judgment that reached the question of the statute's and regulations' comportment with the First Amendment, and we DISMISS that part of the plaintiffs' action as unripe.

---

**16.** The stated purpose behind the NLEA was to promote public health through the use of valid and understandable claims for food and dietary supplement labels, and to protect the public from misleading and fraudulent health claims. *See* 59 Fed.Reg. 395, 402–03.

**17.** We recognize that, according to the statute, if the FDA does not meet this 540 day deadline, it must provide Congress with the "reasons action on the regulation did not occur within such 540

days." 21 U.S.C. § 343(r)(4)(A)(i); see supra note 6. But, in ruling on plaintiffs' *facial* challenge to the prior restraint imposed by the regulations (and now by the statute), we need not consider particular situations where this additional delay might occur, and we express no opinion on this provision's constitutionality. A facial challenge to possible extensions to the 540 day review process is not ripe at this time for all the reasons given in Section II.A. of this opinion.