**BROADVIEW CHEMICAL CORPORA-
TION, Plaintiff-Appellant,**

v.

**LOCTITE CORPORATION, Defendant-
Appellee.**

**No. 730, Docket 33749.**

United States Court of Appeals
Second Circuit.

Argued July 24, 1969.

Decided Oct. 29, 1969.

Granger Cook, Jr., David A. Anderson, Hume, Clement, Hume & Lee, James P. Hume, Henry L. Brinks, Chicago, Ill., for appellant.

Walter D. Ames, Robert J. Lasker, Watson, Cole, Grindle & Watson, Washington, D. C., J. Rodney Reck, Newington, Conn., W. Robert Hartigan, Hartford, Conn., for appellee.

Before WATERMAN and HAYS, Circuit Judges, and BARTELS, District Judge.*

WATERMAN, Circuit Judge:

Broadview Chemical Corporation, the plaintiff below, appeals from the district court's refusal to entertain its declaratory judgment action. Broadview sought in that action to establish that it has not infringed two patents belonging to defendant Loctite and asserts that adjudication of this question is essential to Broadview in order that it may continue in the business of producing sealants. We agree that the declaratory judgment complaint should have been heard, and accordingly we reverse and remand for further proceedings below.

Broadview and Loctite are competing producers of anaerobic sealants, compositions which serve to bond metals together in the absence of oxygen. This appeal is another clash in the prolonged legal strife between the parties which began in June 1964 when Broadview sought a declaratory judgment that five United States patents owned by Loctite were invalid and were not infringed by

* Of the Eastern District of New York, sitting by designation.

32 anaerobic sealant formulations then being manufactured by Broadview. In that proceeding Loctite counterclaimed for infringement. On February 15, 1967 the action was settled by a consent decree entered upon a stipulation in which Broadview acknowledged that three of Loctite's five patents were valid and infringed by 30 of Broadview's 32 compositions. Broadview agreed to refrain from further infringement.

Subsequently Broadview withdrew its old formulations from the market and commenced marketing another line of sealants. On September 21, 1967, charging that these new formulations were essentially the same as the prior Broadview line, and therefore their marketing violated the consent decree, Loctite moved to punish Broadview for contempt. After a brief trial, the United States District Court for the District of Connecticut, Blumenfeld, J., found that all of Broadview's allegedly new formulations violated the consent decree by infringing one or more of the Loctite patents covered by that decree, held in favor of Loctite, ruled Broadview in contempt of court, and decreed that "for each future violation of the Consent Decree the violating persons shall pay to Loctite Corporation $2,000." On appeal this court affirmed the trial court's finding of contempt as to all but two of nine new Broadview formulations. Broadview Chemical Corp. v. Loctite Corp., 406 F.2d 538 (2 Cir.), cert. denied, 394 U.S. 976, 89 S.Ct. 1472, 22 L.Ed.2d 755 (1969). Thereafter, on March 10, 1969, the district court injunction issued, enjoining "Broadview Chemical Corporation * * * its officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of this injunction" from infringing the Loctite patents or from otherwise violating the consent decree of February 15, 1967. The court also reiterated that the $2,000 penalty would be imposed upon any person violating that decree or the March 10 decree.

Thereafter Loctite sent letters to Broadview's and Loctite's customers advising them both of the decree and later of the injunction, and also flatly informing Broadview's customers that Broadview was incapable of preparing any workable non-infringing anaerobic sealant composition and that Loctite would not hesitate to bring legal action against any appropriate party whom Loctite should find in violation of the court's orders.

Broadview has now devised yet another line of formulations which it refers to as the KBK series, and it initiated this present action in order to obtain a declaratory judgment that these latest compositions do not infringe the Loctite patents involved in the previous actions. According to Broadview, Loctite had already alleged that the KBK series infringed Loctite's patents and thus an actual controversy had been created. Loctite, however, moved to dismiss the complaint on the ground that no actual controversy existed between the parties as required by 28 U.S.C. § 2201. Loctite's motion was granted, the district court refusing to exercise its discretionary jurisdiction, and this appeal followed.

Although the court below recognized that there probably did exist "a sufficient controversy between the parties to satisfy the jurisdictional requirements of the Declaratory Judgment Act" the trial judge declined to exercise his discretion to entertain the action. The reasons given for this decision are that "[a]part from the possibility of a penalty for violation of the injunction the financial interest at stake is small"; that Broadview removed the issue of validity by conceding it; that Broadview's argument was not with Loctite but with the court for having adjudicated Loctite's patents to be valid; that only after the penalty provisions became final did Broadview recall the KBK products and seek a declaratory judgment; and that the court should not be kept open "as a testing ground for such prolific chemists * * *."

We agree that a "case of actual controversy" within the meaning of § 2201 does exist. Factually, this case amply satisfies the criteria necessary to

constitute the requisite "threat of infringement" set forth in Muller v. Olin Mathieson Chemical Corp., 404 F.2d 501 (2 Cir. 1968). Despite Loctite's assertions that it has no knowledge of Broadview's KBK formulations and that it has never tested them to ascertain whether they are an infringement, numerous letters by Loctite to Broadview and to Broadview customers, coupled with the history of fierce litigation between the parties, strongly evidence a justiciable controversy.[1] Thus this is not a hypothetical or academic dispute or a request in the abstract for an advisory opinion, but a definite, concrete controversy of sufficient immediacy to warrant the issuance of a declaratory judgment.[2]

■ But, as we said in *Muller, supra,* " * * * even when justiciability is present the court is not required to proceed with the declaratory judgment action, for it is well settled that the trial court's decision to exercise declaratory jurisdiction is a discretionary one." *Id.*

at 505. However, with respect to the exercise of discretion under the Declaratory Judgment Act, as distinguished from other discretionary rulings, "the appellate court in all cases must exercise its own judgment on the propriety of the refusal or grant [of a request to entertain a declaratory judgment action] and not rely upon the judgment of the trial court." Borchard, Declaratory Judgments 294 (2d ed. 1941). Similarly, Professor Moore states that "in reviewing the trial court's exercise of discretion to grant or refuse declaratory relief, a sound position is that the appellate court may substitute its judgment for that of the lower court. The determination of the trial court may, therefore, be reversed where, though not arbitrary or capricious, it was nevertheless erroneous." Moore's Federal Practice (2d ed. 1966), Vol. 6A, 3030.[3] Contrary to Loctite's contention, we are not persuaded that other cases[4] require or even suggest a more limited standard of review.

1. The contents of the letters are sufficiently described in the opinion below:

The first letter in question was sent on February 17, 1967, three days after entry of the consent decree, to Loctite distributors by Robert Krieble, Loctite's president. Included in it was the statement, "We believe our composition patents include the elements which are essential to the anaerobic (self-hardening in the absence of air) cure and that any workable product must therefore be dominated by these patents. In accepting substitutes, the user runs the risk of buying a product which will be unstable, uncurable or illegal." In another letter, dated June 27, 1968, shortly after the judgment of contempt, Loctite stated, "We also feel this decision offers added support for our previously expressed opinion that Broadview is not capable of preparing marketable, non-infringing, anaerobic products."

Moreover, letters issued by Loctite assert that it will back up its statements in the courts. In a letter dated October 3, 1967, Mr. Krieble informed Loctite's distributors of the filing of the contempt action and made the following assertions: "However, when we are placed in a position where the integrity of our business or our patents is at stake, we will not

hesitate to take legal action against any appropriate party." It went on, "While we are not anxious to sue Sta-Lok distributors, sellers of infringing Sta-Lok products are just as guilty as Broadview under the patent laws." To the same effect is a letter dated January 29, 1969, announcing the court of appeals' affirmance of the contempt judgment and the $2000 penalty.

2. See Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240, 57 S.Ct. 461, 81 L.Ed. 617 (1937); Dewey & Almy Chem. Co. v. American Anode, Inc., 137 F.2d 68 (3 Cir.), cert. denied, 320 U.S. 761, 64 S.Ct. 70, 88 L.Ed. 454 (1943); Zysset v. Popeil Brothers, Inc., 167 F.Supp. 362 (N.D.Ill.1958), aff'd on other grounds, 276 F.2d 354 (7 Cir.), cert. denied, 364 U.S. 826, 81 S.Ct. 62, 5 L.Ed.2d 54 (1960).

3. Accord, Sears, Roebuck & Co. v. American Mut. Liab. Ins. Co., 372 F.2d 435, 438 (7 Cir. 1967); Delno v. Market St. Ry. Co., 124 F.2d 965, 968 (9 Cir. 1942).

4. Defendant cites Public Affairs Associates, Inc. v. Rickover, 369 U.S. 111, 82 S.Ct. 580, 7 L.Ed.2d 604 (1962); Topp-Cola Co. v. Coca-Cola Co., 314 F.2d 124 (2 Cir. 1963); Wong Wing Hang v. INS, 360 F.2d 715 (2 Cir. 1966);

Applying the test enunciated above, we hold that the district court committed error. "The two principal criteria guiding the policy in favor of rendering declaratory judgments are (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Borchard, *supra* at 299. It follows as a general corollary to this rule that if either of these objectives can be achieved the action should be entertained and the failure to do so is error.

It is our conclusion that the following facts required the trial court to entertain jurisdiction and to issue a declaratory judgment: (1) the *in terrorem* effect, in the event Loctite's position were sound, of the $2,000 penalty applicable not only to the appellant but also to anyone who, with notice of the injunction, participated in a sealant transaction with Broadview; (2) Loctite's threat to Broadview's customers; (3) the amount of infringement damages normally recoverable together with, in this particular case, the probability of increased damages for wilful infringement; and (4) a liberal interpretation has been given to charges of infringement in patent cases for the purpose of taking jurisdiction in declaratory judgment actions. See Muller v. Olin Mathieson Chemical Corp., *supra*. Although the patents in suit here have been declared valid, the amplitude of the area they affect has been interpreted differently by both parties and remains undetermined. In view of the staggering damages resulting from a mistake on the part of Broadview or of its customers, Broadview will be compelled to abandon the manufacture and sale of anaerobic sealants, even though the Broadview products may be outside of the area affected by the Loctite patents. Therefore, contrary to the view taken below, we are of the opinion that jurisdiction should be taken, for, once it has been determined that there is a justiciable controversy, the existence of the outstanding injunction with its penalty proviso and the likelihood that Broadview commenced the action out of the fear of having the contempt penalty invoked against it, intensifies, rather than diminishes, the desirability—and indeed even indicates the necessity—of granting access to the courts through an application for declaratory relief. To say, as the court below said, that Broadview's real controversy is with the court, not with Loctite, is only to confuse the situation. Though we share the district court's concern that the federal courts not be worn down as a testing ground for "prolific chemists," 28 U.S.C. § 2201 governs, and, if the requirements of § 2201 are met, a party in Broadview's precarious position penalty-wise should not be compelled to act at its peril when it has the foresight to seek declaratory relief; and it would appear to us that, under the circumstances here, it is of no consequence that the injunction included in the judgment order is in the usual form and adopts the wording of Rule 65(d), Fed.R.Civ.P. 65 (d).

The district court's two other bases for refusing to accept jurisdiction, i. e., the absence of a large financial interest except for the possibility of monetary punishment after an adjudication of contempt, and the lack of a claim of patent invalidity, are insufficient to support the refusal. In fact they conceivably were implicitly noted as such by the district court itself when it stated, "[w]ere these the only problems, the court might be willing to entertain the case." As already discussed, the monetary sanction for violation of the contempt order is of dominant importance in this case and it cannot be overlooked when considering the possible pecuniary damages to the plaintiff. Nor should the public interest behind the " * * * public policy * * * in preventing an invalid patent from re-

Lear Siegler, Inc. v. Adkins, 330 F.2d 595 (9 Cir. 1964); McGraw-Edison Co. v. Preformed Line Products Co., 362 F.2d 339 (9 Cir.), cert. denied, 385 U.S. 919, 87 S.Ct. 229, 17 L.Ed.2d 143 (1966).

maining in the art 'as a scarecrow' * * * " Wembley, Inc. v. Superba Cravats, Inc., 315 F.2d 87, 89 (2 Cir. 1963) obscure a similar public interest in determining the limitations upon the effective reach of a concededly valid patent.

Accordingly, the judgment below is reversed and the cause is remanded for further proceedings.