**SHEET METAL DIVISION OF CAPITOL DISTRICT SHEET METAL, ROOFING & AIR CONDITIONING CONTRACTORS ASSOCIATION, INC.; Associated Sheet Metal and Roofing Contractors of Connecticut; and Sheet Metal Contractors Association of Northern New Jersey, Plaintiffs,**

v.

**LOCAL UNION 38 OF THE SHEET METAL WORKERS INTERNATIONAL ASSOCIATION and Sheet Metal & Roofing Employers Association of Southeastern New York, Inc., Defendants.**

No. 98–CV–1023.

United States District Court,
N.D. New York.

March 24, 1999.

Couch, White, Brenner, Howard & Fiegenbaum, LLP, Albany, NY (James F. Barriere, Leslie F. Couch, Joel M. Howard, III, of counsel), for Plaintiffs.

Wilson, Elser, Moskowitz, Edelman & Dicker LLP, New York City (Thomas W. Hylands, Fred N. Knopf, of counsel), Sullivan, Ward, Bone, Tyler & Asher, P.C., Southfield, MI (Anthony A. Asher, of counsel), for Defendant Sheet Metal & Roofing Employers Association of Southeastern New York, Inc.

Office of Jeffrey S. Dubin, Garden City, NY (Jeffrey S. Dubin, of counsel), for Defendant Local Union 38.

## MEMORANDUM–DECISION & ORDER

McAVOY, Chief Judge.

Plaintiffs Sheet Metal Division of Capitol District Sheet Metal, Roofing & Air Conditioning Contractors Association, Inc. ("Capitol District Sheet Metal"), Associated Sheet Metal and Roofing Contractors of Connecticut ("Connecticut Sheet Metal") and Sheet Metal Contractors Association of Northern New Jersey ("New Jersey Sheet Metal") (collectively "plaintiffs") brought the instant action on June 30, 1998, against Local Union 38 of the Sheet

Metal Workers International Association ("Local 38") and Sheet Metal & Roofing Employers Association of Southeastern New York, Inc. ("Local 38 SENY Contractors") (collectively "defendants"), alleging violations of (1) sections 1 and 2 of the Sherman Antitrust Act ("Sherman Act"), 15 U.S.C. § 1 *et seq.;* (2) sections 8(b)(4)(B) and 8(e) of the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 158(b)(4), (e); (3) the Donnelly Act, N.Y. GEN. BUS. LAW § 340; (4) the Connecticut Antitrust Act, CONN. GEN. STAT. § 35–26 *et seq.;* and (5) the New Jersey Antitrust Act, N.J. STAT. ANN. § 56:9–1.

Plaintiffs now move for a declaratory judgment that Article II, Section 1 of defendants' collective bargaining agreement is void and unenforceable, or, in the alternative, a preliminary injunction enjoining defendants from enforcing that provision. Defendant Local Union 38 cross-moves to dismiss the Complaint for failure to state a claim pursuant to FED. R. CIV. P. 12(b)(6).

## I. Background

Plaintiffs are multi-employer bargaining agents representing union sheet metal contractors from various counties in upstate New York, Connecticut and New Jersey. The contractors are engaged in the business of fabricating sheet metal duct work and other sheet metal products for use on public and private construction projects throughout New York, New Jersey and Connecticut.[1] Defendant Local 38 is an unincorporated association of union sheet metal workers covering various counties in the lower Hudson Valley and Connecticut.[2] Defendant Local 38 SENY Contractors is a multi-employer bargaining agent representing sheet metal contractors in the geographical region represented by Local 38 in New York and Connecticut. Thus, defendant contractors are located in a geographic location different from plaintiffs.

The gravamen of the parties' dispute concerns a provision in the Collective Bargaining Agreement ("CBA" or "Agreement") entered into between Local 38 and Local 38 SENY Contractors, which provides:

> To protect and preserve for the Building Trades employees covered by this Agreement all work they have performed and all work covered by the Agreement, and to prevent any device or subterfuge to avoid the protection and preservation of work; it is agreed that all the work requiring sketching and fabrication shall be performed by employees hereunder, either in the shop or on the job site within the geographical jurisdiction of [Local 38].

CBA, Art. II, § 1.

Plaintiffs allege that this provision violates the Sherman Act and NLRA by erecting a trade barrier around plaintiffs' geographical area by prohibiting union sheet metal contractors from buying and selling, and plaintiffs' contractors from providing, sheet metal sketched or fabricated outside defendants' geographical jurisdiction to project sites in defendants' jurisdiction. In response, defendants contend that the provision is a valid work preservation clause and falls within the construction industry proviso in section 8(e) of the NLRA and is therefore protected under the "nonstatutory exemption" of the Sherman Act. Defendants further argue that because the National Labor Relations

---

1. Capitol District Sheet Metal represents contractors in the counties of Albany, Clinton, Columbia, Essex, Franklin, Fulton, Greene, Hamilton, Montgomery, Rensselaer, Saratoga, Schenectady, Schoharie, Warren, and Washington in New York. Connecticut Sheet Metal represents contractors in the counties of Hartford, New Haven, Tolland, Middlesex, Windham, and New Loudon in Connecticut, and Fishers' Island in New York. New Jersey Sheet Metal represents contractors ·in the counties of Bergen, Essex, Hudson, Morris, Passaic, Somerset, Sussex, and Union in New Jersey.

2. Local 38 represents contractors in the counties of Westchester, Putnam, Dutchess, Orange, Rockland, Sullivan, and Ulster in New York and Fairfield and Litchfield in Connecticut.

Board ("NLRB") held the clause valid under section 8(e), it is therefore "presumptively exempt from antitrust scrutiny under the Sherman Act." Def. Local 38 SENY Contractors Mem. of Law at 1. Thus, the focus of the Court's inquiry is whether the clause provided in defendants' CBA restricting fabrication of sheet metal work to contractors located within a specific geographic location runs afoul of the Sherman Act and NLRA.

## II. Discussion

### A. Justiciability

Defendant Local 38 SENY Contractors first argue that plaintiffs' claims should be dismissed on ripeness grounds because defendants have indicated that the disputed provision will not be enforced against plaintiffs, who are non-signatories to the CBA. *See* Def. Local 38 SENY Contractors Mem. of Law at 13. In response, plaintiffs argue that defendants' agreement to refrain from enforcing the clause is valid only during the pendency of the litigation, and that defendant Local 38 intends to enforce the provision as a permissible "work preservation" clause under the NLRA and Sherman Act. *See* Def. Local 38 Mem. of Law at 17. Moreover, plaintiffs argue that though they are not signatories to defendants' CBA, they are still bound by its terms and conditions. *See* Pl. Mem. of Law at 3; Def. Local 38 Mem. of Law at 12. Thus, the Court must first consider whether plaintiffs' challenge to the CBA provision is ripe for review.

 Ripeness is a constitutional prerequisite to the exercise of jurisdiction by federal courts. *See Nutritional Health Alliance v. Shalala,* 144 F.3d 220, 225 (2d Cir.) (citing *Abbott Laboratories v. Gardner,* 387 U.S. 136, 148–49, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)), *cert. denied,* —— U.S. ——, 119 S.Ct. 589, 142 L.Ed.2d 532 (1998); *Thomas v. City of New York,* 143 F.3d 31, 34–35 (2d Cir.1998). In evaluating whether a declaratory judgment action is ripe, the Court must consider (1) "the fitness of the issues for judicial review, and (2) the injury or hardship to the parties of withholding judicial consideration." *Nutritional Health Alliance,* 144 F.3d at 225. Recognizing that the determination whether declaratory judgment actions are justiciable is "one of degree," the Supreme Court stated:

> The difference between an abstract question and a "controversy" contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy. Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

*Maryland Cas. Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941).

 Thus, whether particular facts are sufficiently immediate and real to make an actual controversy must be determined on a case-by-case basis. *See Hendrix v. Poonai,* 662 F.2d 719, 721–22 (11th Cir.1981) (per curiam) (citing *Mobil Oil Corp. v. Oil, Chem. & Atomic Workers Int'l Union,* 483 F.2d 603, 607 (5th Cir.1973)).

 In some instances, a declaratory judgment is proper even though there are future contingencies that will determine whether a controversy ever actually becomes real. *See GTE Directories Publishing Corp. v. Trimen America, Inc.,* 67 F.3d 1563, 1569 (11th Cir.1995) (citing 10A CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL 3D § 2757 (West 1983)); *Associated Indem. Corp. v. Fairchild Indus., Inc.,* 961 F.2d 32, 35 (2d Cir.1992) ("That the liability may be contingent does not necessarily defeat jurisdiction of a declaratory judgment action."). A controversy does not exist, however, in cases where

the plaintiff's claim is based on an abstract question "based upon the possibility of a factual situation that may never develop." *Hendrix*, 662 F.2d at 722 (holding that plaintiff's antitrust claim did not present a justiciable controversy because there was no clear indication that the hospital would deny plaintiff privileges to work at the hospital). Thus, the critical issue is whether "the case presents a sufficiently concrete case and controversy upon which relief properly may be fashioned." *National Basketball Ass'n v. SDC Basketball Club, Inc.*, 815 F.2d 562, 566 n. 2 (9th Cir.), *cert. denied sub nom., Los Angeles Memorial Coliseum Com'n v. National Basketball Ass'n*, 484 U.S. 960, 108 S.Ct. 362, 98 L.Ed.2d 386 (1987).

■ Here, the parties have entered into a stipulation in which Local 38 has agreed to refrain from enforcing the clause pending the determination of plaintiffs' motions. Significantly, the stipulation provides that Local 38 may file an unfair labor practice charge with the NLRB against plaintiffs for violations of the CBA provision if the Court denies plaintiffs' motion. Local 38's argument that the present dispute is not ripe for the Court's review is belied by the express language in the stipulation which evinces Local 38's intent to enforce the provision to "create a level playing field for all contractors" and "preserve work for its members." Def. Local 38 Mem. of Law at 17. Thus, there is a "practical likelihood" that Local 38 would enforce the provision in the event the Court ruled in its favor on plaintiffs' claims for declaratory and injunctive relief. *GTE Directories Publishing Corp.*, 67 F.3d at 1569; *see also Nutritional Health Alliance*, 144 F.3d at 225–26 (noting that pre-enforcement review of a disputed provision or regulation is appropriate for judicial resolution "where the facial challenge to the [disputed provision] involve[s] the purely legal question of whether the [provision] at issue exceeded the scope permitted by the underlying statute") (quoting *Abbott Labs.*, 387 U.S. at 149, 87 S.Ct. 1507).

The practical effect of finding that plaintiffs' claims do not present a justiciable case or controversy would force plaintiffs to subject themselves to an unfair labor practice charge before seeking a declaratory judgment. *See GTE Directories Publishing Corp.*, 67 F.3d at 1569. Recognizing that the "practical likelihood" that a contingency may occur is sufficient to finding an actual controversy exists, this result was rejected by the Ninth Circuit in *National Basketball Association*. In that case, the former San Diego Clippers, a member of the National Basketball Association ("NBA"), moved their franchise to Los Angeles without NBA approval. *See National Basketball Ass'n*, 815 F.2d at 564. While the NBA opposed the move, it took no action based on the Clippers' threats to sue the NBA for antitrust violations if it took any affirmative action to sanction them or deny them scheduling rights in Los Angeles. *See id.* at 565. The NBA subsequently filed a declaratory judgment action seeking a declaration that it could investigate the proposed move and sanction the Clippers without violating antitrust laws. *See id.* In holding that the NBA's declaratory judgment action presented an actual case or controversy between the parties, the Ninth Circuit noted:

> The NBA's claims meet the requirements of the test. The [parties'] alternative formulation of case and controversy would force the NBA to impose a fine or sanction on the Clippers before an action could accrue. This is the type of Damoclean threat that the Declaratory Judgment Act is designed to avoid. Since the NBA's "real and reasonable apprehension," was that any action on the Clippers' move could result in antitrust liability, the case is justiciable.

*Id.* at 566 (citations omitted).

In the instant case, Local 38's clear indication that it intends to enforce the disputed provision in the CBA resulted in plaintiffs' "real and reasonable apprehension" that acting in a manner inconsistent with the CBA provision would result in adverse

action against plaintiffs. *See id.; see also GTE Directories Publishing Corp.,* 67 F.3d at 1568–69. Distinct from the factual setting presented in *Hendrix,* here, there is a clear indication that Local 38 would seek to enforce the CBA provision and file an unfair labor practice charge with the NLRB. *See Hendrix,* 662 F.2d at 722; Def. Local 38 Mem. of Law at 17. Defendant's argument also overlooks that although plaintiffs are not signatories to defendants' CBA, they are nevertheless bound to the challenged provision pursuant to the terms of their own union agreements. *See* Def. Local 38 Mem. of Law at 12.

An issue may also be justiciable if the challenged action creates a "direct and immediate hardship for the parties." *Nutritional Health Alliance,* 144 F.3d at 226. Here, it is clear that if plaintiffs do not comply with the CBA between defendants, they will be subject to potential liability with the NLRB. Thus, the practical effect of Local 38's intention to enforce the disputed provision is to restrain plaintiffs' ability to conduct business in the geographical area included in defendants' jurisdiction. This results in a burden sufficient to render the present dispute ripe for judicial review. *See Abbott Laboratories,* 387 U.S. at 152, 87 S.Ct. 1507 ("This is also a case in which the impact of the regulations upon the petitioners is sufficiently direct and immediate as to render the issue appropriate for judicial review at this stage. These regulations ... [have] a direct effect on the day-to-day business of all prescription drug companies; its promulgation puts petitioners in a dilemma that it was the very purpose of the Declaratory Judgment Act to ameliorate."); *Nutritional Health Alliance,* 144 F.3d at 227.

Moreover, because plaintiffs have raised possible antitrust claims from the outset, they may seek declaratory and injunctive relief related to those claims in federal court rather than have those claims deferred to the NLRB under the doctrine of primary jurisdiction. *See Connell Const. Co., Inc. v. Plumbers and Steamfitters Local Union No. 100,* 421 U.S. 616, 626, 95 S.Ct. 1830, 44 L.Ed.2d 418 (1975); *National Basketball Ass'n,* 815 F.2d at 566; *Telecom Plus of Downstate New York, Inc. v. Local Union No. 3, Int'l Bhd. of Elec. Workers,* 719 F.2d 613, 615 (2d Cir.1983) ("That certain activities may arguably constitute an unfair labor practice under section 8(e) [of the NLRA] does not oust a federal court of jurisdiction over a Sherman Act claim arising out of the same activities as part of a combination with employers to restrain competition against the latter, and this is true whether or not the Sherman Act plaintiff has invoked the jurisdiction of the Board over his unfair labor practice claims.") (quoting *Intercontinental Container Transport Corp. v. New York Shipping Ass'n,* 312 F.Supp. 562, 571 (S.D.N.Y.), *rev'd on other grounds,* 426 F.2d 884 (2d Cir.1970)). Accordingly, the Court finds that plaintiffs' claims are ripe for review.

## B. Declaratory Judgment Standard

Even when justiciability is present, a court is not required to proceed with a declaratory judgment action, "for it is well-settled that the trial court's decision to exercise declaratory jurisdiction is a discretionary one." *See Broadview Chem. Corp. v. Loctite Corp.,* 417 F.2d 998, 1000 (2d Cir.1969), *cert. denied,* 397 U.S. 1064, 90 S.Ct. 1502, 25 L.Ed.2d 686 (1970); *see also Holup v. Gates,* 544 F.2d 82, 85 n. 3 (2d Cir.1976), *cert. denied sub nom., Gates v. Delorenzo,* 430 U.S. 941, 97 S.Ct. 1571, 51 L.Ed.2d 787 (1977); 10A WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D, at § 2759 (West 1983) ("The granting of a declaratory judgment rests in the sound discretion of the district court exercised in the public interest.").

The Declaratory Judgment Act authorizes any federal court to render declaratory judgments in any "case of actual controversy within its jurisdiction." *See* 28 U.S.C. § 2201(a) (West 1999). The two

principal criteria guiding the policy in favor of rendering declaratory judgments are "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *See Broadview Chem. Corp.*, 417 F.2d at 1000–01. If either of these objectives can be achieved, the action should be entertained and the failure to do so is error. *See id.*

 In the instant case, defendants argue that because the CBA provision is a valid work preservation clause and is protected by the construction industry proviso to section 8(e) of the NLRA, it is therefore exempt from antitrust scrutiny. Plaintiffs argue, however, that the objective of the provision is secondary in nature—to prohibit plaintiffs from providing sheet metal to projects located within Local 38's jurisdiction by "the erection of trade barriers extending not only to the construction site, but around the entire geographical area of the local union," Pl. Mem. of Law at 13, and therefore falls outside the scope of the construction industry proviso. Plaintiffs further argue that the provision violates the federal and state antitrust laws because of its anti-competitive effect not naturally flowing from typical collective bargaining agreements. *See, e.g., Local 210, Laborers' Int'l Union of N. Am. v. Labor Relations Div. Associated Gen. Contractors of Am.*, 844 F.2d 69, 79 (2d Cir.1988). Thus, plaintiffs' motion presents an appropriate declaratory judgment action.

Accordingly, the Court must determine whether the clause at issue (1) is within the intended scope of the construction industry proviso; (2) is a valid work preservation clause; and (3) falls within a recog-

nized exemption from the application of federal antitrust laws. *See Local 210, Laborers' Int'l Union of N. Am.*, 844 F.2d at 74.

## C. The Interplay Between Section 8(e) of the NLRA and the Sherman Act

Section 8(e) of the NLRA states, in part:

It shall be an unfair labor practice for any labor organization and any employer to enter into any contract or agreement, express or implied, whereby such employer ceases or refrains or agrees to cease or refrain from handling, using, selling, transporting or otherwise dealing in any of the products of any other employer, or to cease doing business with any other person, and any contract or agreement entered into heretofore or hereafter containing such an agreement shall be to such extent unenforcible [sic] and void.

29 U.S.C. § 158(e) (West 1998).

 Section 8(e) was designed to prohibit "hot cargo" clauses [3] in collective bargaining agreements, "by which unions would secure agreements from employers to boycott the goods or services of other employers that did not comply with union standards or recognize a union." *Local 210, Laborers' Int'l Union of N. Am.*, 844 F.2d at 74 (citing *National Woodwork Mfrs. Ass'n v. NLRB*, 386 U.S. 612, 634–37, 87 S.Ct. 1250, 18 L.Ed.2d 357 (1967)); *Carrier Air Conditioning Co. v. NLRB*, 547 F.2d 1178, 1184–85 (2d Cir.1976), *cert. denied sub nom., Sheet Metal Workers' Int'l Ass'n, Local 28 v. Carrier Air Conditioning Co.*, 431 U.S. 974, 97 S.Ct. 2940, 53 L.Ed.2d 1072 (1977). Liability under sec-

---

**3.** As the Supreme Court recognized in *National Woodwork Manufacturers*, Congress defined a "hot cargo clause" as:

"[A]n agreement between a union and a unionized employer that his employees shall not be required to work on or handle "hot goods" or "hot cargo" being manufactured or transferred by another employer

with whom the union has a labor dispute or whom the union considers and labels as being unfair to organized labor."

386 U.S. at 634 n. 24 (quoting S. REP. No. 1139, at 3 (1960)) (Final Report of the Senate Select Committee on Improper Activities in the Labor or Management Field).

tion 8(e) depends, in large part, on whether the objective of a specific provision in an agreement is characterized as "primary" or "secondary" in nature. *See National Woodwork Mfrs. Ass'n,* 386 U.S. at 634, 87 S.Ct. 1250; *Local 210, Laborers' Int'l Union of N. Am.,* 844 F.2d at 73. In *Local 210,* the Second Circuit distinguished between these objectives as follows:

> An agreement has primary objectives, and thus is outside the ban of section 8(e), if it is intended to preserve work traditionally performed by a union for a particular employer. If, on the other hand, an agreement is designed to "influenc[e] the labor relations policies of [third] parties" by prohibiting dealings with those parties, it then has secondary goals and it is barred by section 8(e).

844 F.2d at 73 (citations omitted).

As the Supreme Court emphasized in *NLRB v. International Longshoremen's Association:*

> [T]he relevant inquiry under [section 8(e)] is whether a union's activity is primary or secondary—that is, whether the union's efforts are directed at its own employer on a topic affecting employees' wages, hours, or working conditions that the employer can control, or, instead, are directed at affecting the business relations of neutral employers and are "tactically calculated" to achieve nonunion objectives outside the primary employer-employee relationship.

473 U.S. 61, 81, 105 S.Ct. 3045, 87 L.Ed.2d 47 (1985).

Accordingly, courts have upheld clauses related solely to the preservation of traditional tasks performed at the job site as protected primary goals of a collective bargaining agreement. *See id.* at 77, 105 S.Ct. 3045 (noting the occurrence of work preservation clauses in cases where "technological innovation may significantly change the character of an industry . . . or traditional work patterns"); *National Woodwork Mfrs. Ass'n,* 386 U.S. at 646, 87 S.Ct. 1250. However, courts have held that agreements that permit labor unions and employers to achieve a complete monopoly to the exclusion of goods and services provided by nonunion members are violative of section 8(e). *See Connell Const. Co.,* 421 U.S. at 625, 95 S.Ct. 1830; *National Woodwork Mfrs. Ass'n,* 386 U.S. at 630, 87 S.Ct. 1250; *Allen Bradley Co.,* 325 U.S. at 809–10, 65 S.Ct. 1533.

In enacting section 8(e), however, Congress made an express proviso designed to "preserve the status quo in the construction industry." *National Woodwork Mfrs. Ass'n,* 386 U.S. at 637, 87 S.Ct. 1250; *Local 210, Laborers' Int'l Union of N. Am.,* 844 F.2d at 73 (noting that section 8(e) expressly provided that "purely secondary activity would be tolerated in certain industries"). To that end, Congress added the construction industry proviso to section 8(e) which states, in relevant part:

> [N]othing in this subsection shall apply to an agreement between a labor organization and an employer in the construction industry relating to the contracting or subcontracting of work to be done *at the site of the construction,* alteration, painting, or repair of a building, structure, or other work. . . .

29 U.S.C. § 158(e) (emphasis added).

In enacting the construction industry proviso, Congress intended that certain conduct engaged in by labor unions would be permitted without violating the federal antitrust laws. *See Connell Const. Co., Inc.,* 421 U.S. at 622, 95 S.Ct. 1830 ("[A] proper accommodation between the congressional policy favoring collective bargaining under the NLRA and the congressional policy favoring free competition in business markets requires that some union-employer agreements be accorded a limited nonstatutory exemption from antitrust sanctions.") (citing *Local Union No. 189, Amalgamated Meat Cutters, and Butcher Workmen of N. Am. v. Jewel Tea Co.,* 381 U.S. 676, 85 S.Ct. 1596, 14 L.Ed.2d 640 (1965)); *United Mine Workers v. Pennington,* 381 U.S. 657, 662, 85 S.Ct. 1585, 14

L.Ed.2d 626 (1965) (noting that labor unions are subject to antitrust laws) (citing *Allen Bradley Co.*, 325 U.S. at 802, 65 S.Ct. 1533); *Local 210, Laborers' Int'l Union of N. Am.*, 844 F.2d at 79.

While courts have acknowledged that labor policy requires "tolerance for the lessening of business competition based on differences in wages and working conditions," *Connell Const. Co.*, 421 U.S. at 622, 95 S.Ct. 1830, labor policy clearly does not require "that a union have freedom to impose direct restraints on competition among those who employ its members." *Id.* Thus, restrictive clauses in collective bargaining agreements that impose a direct restraint on the business market, on subjects unrelated to wages, hours, and working conditions, may give rise to substantial anticompetitive effects that "contravene[ ] antitrust policies to a degree not justified by congressional labor policy." *Id.* at 625, 95 S.Ct. 1830; *see also Local 210, Laborers' Int'l Union of N. Am.*, 844 F.2d at 73 (noting that the construction industry proviso explicitly sanctions certain union-employer agreements which give rise to "secondary boycotts" sufficiently anticompetitive to give rise to violations of the Sherman Act). Accordingly, clauses such as the one at issue in the instant case "are vulnerable to challenge under federal antitrust law unless they are protected both by the construction industry proviso and by an exemption from antitrust scrutiny." *Local 210, Laborers' Int'l Union of N. Am.*, 844 F.2d at 73; *see also National Woodwork Mfrs. Ass'n*, 386 U.S. at 638, 87 S.Ct. 1250; *Pennington*, 381 U.S. at 664–65, 85 S.Ct. 1585; *Allen Bradley Co.*, 325 U.S. at 810, 65 S.Ct. 1533.

### D. Liability Under Section 8(e) of the NLRA

#### 1. The "Construction Industry Proviso"

In limiting the ability of construction unions to use subcontracting agreements as a "broad organizational weapon,"

Congress limited the construction industry proviso to agreements solely governing work done on a job site. *Connell Const. Co., Inc.*, 421 U.S. at 630, 95 S.Ct. 1830; *see also National Woodwork Mfrs. Ass'n*, 386 U.S. at 638, 87 S.Ct. 1250; *Local 210, Laborers' Int'l Union of N. Am.*, 844 F.2d at 75; *Carrier Air Conditioning Co.*, 547 F.2d at 1184 n. 5. In *Connell Construction Co.*, the Supreme Court reaffirmed the interpretation of the construction industry proviso set forth in *National Woodwork Mfrs. Ass'n* as:

"[A] measure designed to allow agreements pertaining to certain secondary activities on the construction site because of the close community of interests there, but to ban secondary-objective agreements concerning non jobsite work, in which respect the construction industry is no different from any other."

421 U.S. at 630, 95 S.Ct. 1830 (quoting *National Woodwork Mfrs. Ass'n*, 386 U.S. at 638–39, 87 S.Ct. 1250) (footnote omitted).

Thus, the proviso excepts from the proscriptions of section 8(e) agreements relating to the contracting or subcontracting of construction work performed *on a job site*. *Connell Const. Co., Inc.*, 421 U.S. at 630, 95 S.Ct. 1830 ("Congress limited the construction industry proviso to that single situation, allowing subcontracting agreements only in relation to work done on a jobsite."); *National Woodwork Mfrs. Ass'n*, 386 U.S. at 638, 87 S.Ct. 1250; *General Truck Drivers, Chauffeurs, Warehousemen and Helpers of Am., Local No. 957 v. NLRB*, 934 F.2d 732, 737 (6th Cir. 1991) (noting that because the goal of the construction industry proviso was to "avoid tensions among groups of employees at the same site ... Congress exempted transportation to and from job sites from the proviso because employees involved in such work have only 'incidental contact with the site.'"); *Carrier Air Conditioning Co.*, 547 F.2d at 1184 n. 5; *Drivers, Salesmen, Warehousemen, Milk Processors, Cannery, Dairy Employees and*

*Helpers, Local Union No. 695 v. NLRB,* 361 F.2d 547, 553 (D.C.Cir.1966) ("The purpose of the [construction industry] proviso was to alleviate the frictions that may arise when union men work continuously alongside nonunion men on the same construction site.").

By its express terms, the disputed clause at issue restricts the sketching and fabrication of sheet metal by union contractors to shops and job sites within the geographical jurisdiction of Local 38. *See* CBA Art. II, § 2; *see also* Affidavit of Gino J. Colombo (hereinafter "Colombo Aff."), at ¶ 7. By defendants' agreement to place restrictions on work performed *outside* the job site, plaintiffs are prohibited from transporting and installing sheet metal fabricated at offsite sheet metal shops to job sites located within Local 38's jurisdiction.

Furthermore, Local 38 does not suggest that its subcontracting agreement is related to any of the policy objectives underlying the proviso. Specifically, it does not claim to be protecting union employees from having to work alongside nonunion men. The agreement apparently was not designed to protect Local 38's members in that regard, since it was not limited to job sites on which they were working. Rather, the agreement sought to (1) eliminate situations where "low rate employers fabricate items at a lower cost[,] bring them into Local 38's area[,][and] install them on job sites using employees represented by Local 38," Colombo Aff. at ¶ 7, and (2) penalize contractors outside Local 38 who do not comply with Local 38's wage equalization clause, which requires employees to be paid the greater of the wage scale provided in their CBA or the wage scale for the union where the job site is located. *See id.* at ¶¶ 10–12; *see also* CBA, Art. VIII, § 2; Def. Local 38 Mem. of Law at 17. Thus, these restrictions were motivated, in part, by the union's overreaching effort to remedy perceived noncompliance by plaintiffs with the wage equalization clause in the CBA. These admitted objectives are not of the type contemplated under the proviso. *See Connell Const. Co.,* 421 U.S. at 631–32, 95 S.Ct. 1830 (noting that an "unlimited organizational weapon" would be placed in the hands of construction unions where subcontracting agreements were not limited to a particular job site). Accordingly, the clause falls outside the scope of the construction industry proviso.

## 2. The September 3, 1998 NLRB Decision

In arguing that the disputed clause is valid under section 8(e), defendants place considerable reliance on a decision by the NLRB upholding the clause as a permissible work preservation clause under *National Woodwork.*[4] *See* Colombo Aff., Ex. B (Decision of National Labor Relations Board–Region 34, dated September 3, 1998). This argument overlooks that plaintiffs were not a party to that action, and therefore, did not participate in the NLRB proceeding, or have an opportunity to provide evidence relevant to the merits underlying that complaint.

On July 10, 1998, defendant Local 38 SENY Contractors filed a Complaint with the NLRB alleging that the disputed clause constituted an unfair labor practice

---

4. Notably, the Board of Directors of the Sheet Metal and Air Conditioning Contractors' National Association issued a position statement raising doubts over the legality of the CBA provision:

> While sympathetic to the plight of fabricating contractors in high wage areas, the Board of Directors believes that contract provisions that seek totally to bar duct and fittings fabricated in other jurisdictions are ... open opportunities for non-union ad-

vancement, are impossible to effectively enforce, encourage violations and grievances, pit chapter and local union against local union, fly in the face of market trends and are of doubtful legality.... The Labor Committee should resist the spread of provisions that go beyond legitimate protection of traditional work, and seek other remedies to level the playing field.

Aff. of James Barriere, Ex. A (excerpt from Board of Directors Policy Statement).

because it "expressly requires [Local 38 contractors] to refrain or agree to refrain from doing business with any other person." *Id.* at Ex. A. In finding the disputed provision was a permissible work preservation clause, the NLRB held:

> [T]he investigation failed to establish that [Local 38] violated Section 8(e) ... by negotiating a collective bargaining agreement with [Local 38 SENY Contractors] containing a "work preservation" clause which requires that fabrication work be performed in shops or on job sites within the geographical jurisdiction of Local 38.... [T]here is no evidence that employers outside the jurisdiction of Local 38 have entered into the agreement containing the clause in dispute, *or that Local 38 has attempted to enforce the clause against nonsignatory employers.* Under such circumstances, the clause seeks to protect shop fabrication work traditionally performed within the jurisdiction of Local 38 rather than to obtain work not previously performed within its jurisdiction.

Colombo Aff. at Ex. B (September 3, 1998 Decision of the NLRB–Region 34) (emphasis added).

Because plaintiffs were not a party to the underlying charge, and were not afforded an opportunity to participate in the NLRB proceedings or litigate the merits of that charge, plaintiffs cannot be bound by the NLRB holding as it relates to their present claim alleging a violation of section 8(e). *See Colon v. Coughlin,* 58 F.3d 865, 869 (2d Cir.1995) (noting that the party against whom the doctrine of collateral estoppel is asserted bears the burden of showing the absence of a full and fair opportunity to litigate in the prior proceeding) (citing *Kaufman v. Eli Lilly & Co.,* 65 N.Y.2d 449, 455–56, 492 N.Y.S.2d 584, 482 N.E.2d 63 (1985)).

To the extent the NLRB holding is relevant, it is expressly limited to circumstances not present in the instant action. In finding that the disputed clause was not violative of section 8(e), the NLRB noted an absence of evidence showing that employers outside Local 38's jurisdiction entered into agreements with Local 38 containing the clause in dispute, or that Local 38 intended to enforce the clause against nonsignatory employers. *See* Colombo Aff. at Ex. B.

Although plaintiffs were not signatories to the CBA between defendants, they are nevertheless still bound by the terms and conditions of that agreement when they perform work within Local 38's jurisdiction. *See* Pl. Mem. of Law at 3; Def. Local 38 Mem. of Law at 12 ("[Here], union contractors are bound to the agreement negotiated by Local 38 and [Local 38 SENY Contractors], including the work preservation clause in question."). Moreover, Local 38 has clearly indicated its intent to enforce the provision against plaintiffs pending the outcome of this matter. *See* Def. Local 38 Mem. of Law at 17.[5] Thus, the NLRB decision is not controlling on this Court in determining whether the plaintiffs' claims establish a violation of section 8(e).

### 3. Whether the Disputed Clause is a Protected Work Preservation Clause Under *National Woodwork*

■ Defendants' next argue that the disputed provision does not violate section 8(e) because it is a protected work preservation clause under *National Woodwork.*

■ The central inquiry for evaluating claims of work preservation is:

> [W]hether, under all the surrounding circumstances, the [u]nion's objective was preservation of work for [the primary employer's] employees, or whether

---

**5.** The parties have entered into stipulations indicating that Local 38 will enforce the disputed CBA provision pending the outcome of plaintiffs' motion. *See* Stipulation between Capitol District Sheet Metal and Local 38 at ¶ 5, dated July 15, 1998; Stipulation between Connecticut Sheet Metal and Local 38 at ¶ 5, dated August 6, 1998; Stipulation between New Jersey Sheet Metal and Local 38 at ¶ 5, dated November 6, 1998.

the agreements and boycott were tactically calculated to satisfy union objectives elsewhere.... The touchstone is whether the agreement or its maintenance is addressed to the labor relations of the contracting employer vis-a-vis his own employees.

*International Longshoremen's Ass'n,* 473 U.S. at 75, 105 S.Ct. 3045 (citing *National Woodwork Mfrs. Ass'n,* 386 U.S. at 644–45, 87 S.Ct. 1250).

Thus, collective bargaining agreements containing clauses related to "traditional" labor concerns such as wages, hours, and working conditions have been upheld as valid work preservation clauses when technological advancements threatened the elimination of work traditionally performed by union members. *See International Longshoremen's Ass'n,* 473 U.S. at 75, 105 S.Ct. 3045; *National Woodwork Mfrs. Ass'n,* 386 U.S. at 630–31, 87 S.Ct. 1250 (agreement between general contractor and union that union workers would not handle prefabricated doors upheld as a valid work preservation clause because more efficient offsite technology threatened the preservation of work traditionally performed by union members at the job site). However, where the union engaged in activity "to reach out to monopolize jobs or acquire new job tasks when their own jobs are not threatened," courts will invalidate that agreement as a proscribed secondary objective under section 8(e). *International Longshoremen's Ass'n,* 473 U.S. at 75–76, 105 S.Ct. 3045; *see also NLRB v. Enterprise Ass'n of Steam, Hot Water, Hydraulic Sprinkler, Pneumatic Tube, Ice Machine and General Pipefitters of New York,* 429 U.S. 507, 528–30, 97 S.Ct. 891, 51 L.Ed.2d 1 (1977) (union agreement not to handle certain materials included in the general contractor's job specifications and delivered to the construction site held to be an invalid work preservation clause because its objective was "not to preserve, but to aggrandize, [the union's] position and that of its members"); *Local 210, Laborers' Int'l Union of N. Am.,* 844 F.2d at 73; *Carrier Air Conditioning Co.,* 547 F.2d at 1184–85 (no subcontracting clause an invalid work preservation clause because "union [sought] to restrict by contract ... an employer with respect to the products he uses, for the purpose of acquiring for its members work that had not previously been theirs") (quoting *National Woodwork Mfrs. Ass'n,* 386 U.S. at 648, 87 S.Ct. 1250). Thus, valid work preservation clauses must remedy instances where technological innovation significantly changes the character of an industry such that traditional work patterns are displaced. *See International Longshoremen's Ass'n,* 473 U.S. at 75–76, 105 S.Ct. 3045; *National Woodwork Mfrs. Ass'n,* 386 U.S. at 630–31, 87 S.Ct. 1250.

Local 38's own statistical analysis belies its claim that the clause seeks to preserve work traditionally performed by union members. Specifically, during the period from 1985 to 1997, plaintiffs fabricated from 4.6% to 24.2% of the sheet metal installed within Local 38's jurisdiction. *See* Colombo Aff. at ¶ 40. Thus, the clause obtains work performed by plaintiffs—and not, as Local 38 contends, work that was traditionally performed by local contractors within the union's jurisdiction.

Defendants also do not claim that the clause is directed at preserving work that has been eliminated by technological change. Significantly, the disputed provision does not deal with labor relations between defendants or address wages, hours, and working conditions which are the subject of the wage equalization clause. *See, e.g., Brown v. Pro Football, Inc.,* 518 U.S. 231, 235, 116 S.Ct. 2116, 135 L.Ed.2d 521 (1996); *H.A. Artists & Associates, Inc. v. Actors' Equity Ass'n,* 451 U.S. 704, 716, 101 S.Ct. 2102, 68 L.Ed.2d 558 (1981); *Jewel Tea Co.,* 381 U.S. 676, 689, 85 S.Ct. 1596 (1965). Rather, the intent of the clause is to prohibit sheet metal fabricated outside Local 38's jurisdiction from being brought into that jurisdiction to remedy the perceived loss of work and decreased

wages received by local contractors as a result of plaintiffs' alleged noncompliance with the wage equalization provision in the CBA. While a union may cut wages or modify hours to preserve work traditionally performed by its members, it may not enter into an agreement with an employer to refrain from doing business with a third party so that the union may acquire additional work for its members. *See National Woodwork Mfrs. Ass'n*, 386 U.S. at 635–36, 87 S.Ct. 1250 (noting that unions used secondary boycott provision to force employers to do business with only those people approved by union officials); *Local 210, Laborers' Int'l Union of N. Am.*, 844 F.2d at 73 (noting that a clause designed to " 'influenc[e] the labor relations policies of [third] parties' by prohibiting dealings with those parties," is a secondary objective barred under section 8(e)); *Carrier Air Conditioning Co.*, 547 F.2d at 1184–85; *see also International Longshoremen's Ass'n*, 473 U.S. at 91, 105 S.Ct. 3045 (Rehnquist, J., dissenting). Accordingly, the clause is not a valid work preservation clause under section 8(e). Because the clause is not a valid work preservation clause and does not fall within the construction industry proviso, the CBA provision constitutes an unfair labor practice that violates section 8(e).[6]

### E. Sherman Act Claims [7]

The disputed clause also does not fall within one of two recognized labor law exemptions from antitrust scrutiny—the statutory and nonstatutory exemptions.[8] *See Connell Const. Corp.*, 421 U.S. at 621–22, 95 S.Ct. 1830; *Local 210, Laborers' Int'l Union of N. Am.*, 844 F.2d at 79. Because the provision relates to a union-employer agreement, defendants can survive antitrust scrutiny only in the nonstatutory exemption provided in the antitrust laws.[9] In establishing the parameters of the nonstatutory exemption, the Supreme Court in *Jewel Tea* held that agreements between a union and an employer are exempt from antitrust scrutiny if they are:

> so intimately related to wages, hours and working conditions that the union['s] successful attempt to obtain that provision through bona fide, arm's-length bargaining in pursuit of their own labor union policies, and not at the behest of or in combination with nonlabor groups, falls within the protection of the national labor policy and is therefore exempt from the Sherman Act.

381 U.S. at 689–90, 85 S.Ct. 1596.

In assessing whether any particular agreement is protected by the nonstatutory exemption, the " 'crucial determinant is not the form of the agreement . . . but its relative impact on the product market and the interests of union members.' " *Local 210, Laborers' Int'l Union of N. Am.*, 844 F.2d at 79 (quoting *Jewel Tea Co.*, 381 U.S. at 690 n. 5, 85 S.Ct. 1596). Thus, the exemption strives to balance conflicting

---

**6.** Significantly, defendants do not allege that the other elements of a cause of action under section 8(e) are not met.

**7.** Sections 1 and 2 of the Sherman Act provide in relevant part:

> *Section 1.* Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is hereby declared to be illegal. . . .
> *Section 2.* Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or person, to monopolize any part of the trade or commerce among the several States, or

with foreign nations, shall be deemed guilty of a felony. . . .
15 U.S.C. § 1 (West 1997).

**8.** Defendants contend, in large part, that the disputed clause is protected by the nonstatutory exemption because it is a valid work preservation clause under section 8(e). *See* Def. Local 38 Mem. of Law at 11; Def. Local 38 SENY Contractors at 23–24.

**9.** Recognizing the applicability of the nonstatutory exemption, defendants' argue that the disputed clause falls within that exemption to the antitrust laws. *See* Def. Local 38 Mem. of Law at 10; Def. Local 38 SENY Contractors Mem. of Law at 20.

policies embodied in the labor and anti-trust laws. *See id.*

In *Local 210,* the Second Circuit endorsed a two-part test for determining whether an agreement is protected under the nonstatutory exemption:

> First, the agreement at issue must further goals that are protected by national labor law and that are within the scope of traditionally mandatory subjects of collective bargaining. Second, the agreement must not impose a "direct restraint on the business market [that] has substantial anticompetitive effects, both actual and potential, that would not follow naturally from the elimination of competition over wages and working conditions [that results from collective bargaining agreements]."

844 F.2d at 79–80 (quoting *Connell Const. Co.,* 421 U.S. at 625, 95 S.Ct. 1830) (internal citations omitted); *see also Jewel Tea Co.,* 381 U.S. at 689–90, 85 S.Ct. 1596; *Home Box Office v. Directors Guild of Am., Inc.,* 531 F.Supp. 578 (S.D.N.Y.1982), *aff'd,* 708 F.2d 95 (2d Cir.1983) (per curiam).

■ While a restrictive subcontracting clause contained in a lawful collective bargaining agreement "cannot serve as the basis of an antitrust claim," *Local 210, Laborers' Int'l Union of N. Am.,* 844 F.2d at 80, the nonstatutory exemption "offers no similar protection when a union and a nonlabor party agree to restrain competition in a business market." *Connell Const. Co., Inc.,* 421 U.S. at 622–23, 95 S.Ct. 1830; *see also Allen Bradley Co.,* 325 U.S. at 808, 65 S.Ct. 1533 ("Congress never intended that unions could, consistently with the Sherman Act, aid non-labor groups to create business monopolies and to control the marketing of goods and services.").

In the present case, the Court has previously held that the disputed clause is not a valid work preservation clause and does not fall within the construction industry proviso. *See Local 210, Laborers' Int'l Union of N. Am.,* 844 F.2d at 81 (holding that the protection of the construction industry proviso precludes any further antitrust scrutiny). Moreover, the disputed clause operates as a direct restraint on competition by excluding nonunion sheet metal contractors from a portion of the market on subjects unrelated to wages, hours, and working conditions. *See Connell Const. Co.,* 421 U.S. at 623–24, 95 S.Ct. 1830; *Jewel Tea Co.,* 381 U.S. at 689, 85 S.Ct. 1596 ("Employers and unions are required to bargain about wages, hours and working conditions, and this fact weighs heavily in favor of antitrust exemption for agreements on these subjects. But neither party need bargain about other matters and either party commits an unfair labor practice if it conditions its bargaining upon discussions of a nonmandatory subject.").

The intention of the clause is to restrain trade in, and monopolize the fabrication of sheet metal in Local 38's jurisdiction. *See, e.g., Pennington,* 381 U.S. at 666–68, 85 S.Ct. 1585; *Allen Bradley Co.,* 325 U.S. at 800–01, 65 S.Ct. 1533 (agreement between unionized employees of New York City electrical contractors and local employers to boycott electrical equipment manufactured outside the city constituted an unlawful restraint of trade under the Sherman Act). By excluding plaintiffs from that market, the impact of the clause is to give contractors within Local 38's jurisdiction an unfair competitive advantage over plaintiffs. This clearly runs counter to antitrust policy. Accordingly, the clause falls outside the parameters of the nonstatutory exemption and constitutes an unlawful restraint of trade under the Sherman Act.[10]

### III. Conclusion

For the foregoing reasons, plaintiffs' motion for declaratory judgment seeking a declaration that Article II, Section 1 of the

---

**10.** Significantly, defendants do not allege that the other elements of a cause of action under sections 1 and 2 of the Sherman Act are not met.

defendants' collective bargaining agreement dated May 18, 1998 is void and unenforceable is hereby GRANTED.

**IT IS SO ORDERED.**